SHEFFIELD & HERRENDER *vs.* THE ROCHESTER AND
SYRACUSE RAIL ROAD COMPANY.

21 339|
67h 188|

Where, on a trial, the plaintiffs' counsel, before dismissing a witness from the
stand, inquired of the defendants' counsel whether any of the facts testified
to by the witness would be controverted; to which the defendants' counsel
replied that they should introduce no evidence on the points testified to by
him; and the right of cross-examination was *not reserved*; but at the close
of the trial the defendants' counsel called the witness, for further examination,
and he did not appear, having gone home; *it was held* that under these cir-
cumstances the plaintiffs were under no obligation to detain the witness for
the purpose of further examination by the defendants' counsel.

*It seems* that counsel should avail themselves of the opportunity to cross-exam-
ine before a witness leaves the stand; unless the court, for some good reason,
allows them the privilege of doing so at a subsequent stage of the trial.

It is a well settled and incontrovertible principle that an action for negligence
cannot be sustained, if the wrongful act or negligence of the plaintiff, or his
agent, co-operated with the misconduct of the defendant or his agent, to pro-
duce the damages sustained. In order to recover, in such a case, the plaintiff
must be without fault.

Where, in an action against a rail road company, to recover for damages occa-
sioned by a collision between the defendants' cars and the plaintiffs' horse and
wagon, there is evidence on both sides, in regard to the negligence of the de-
fendants, a verdict of the jury in favor of the plaintiffs will be regarded as
settling the question in their favor. But if there is proof of inexcusable neg-
ligence and carelessness on the part of the plaintiffs, or their agent, which con-
tributed to the injury, they cannot recover.

MOTION on the part of the defendants to set aside a ver-
dict, and for a new trial, on a case. The facts are suffi-
ciently stated in the opinion of the court.

*H. R. Selden*, for the defendants.

*T. Hastings*, for the plaintiffs.

*By the Court*, WELLES, J. The action is brought to recover
damages for injuries to the plaintiffs' horse and wagon, occa-
sioned by a collision while the horse and wagon were crossing
the defendants' rail road in the town of Manchester, Ontario
county, in May, 1852. On the trial, at the Ontario circuit in

February, 1852, the first witness called by the plaintiffs was Elmer Hoag, who testified to the partnership of the plaintiffs as keepers of a livery· stable at Macedon Locks, in Wayne county. That he, the witness, knew the horse and wagon owned by the plaintiffs, described in the declaration, and that the horse was worth $150. That he knew James Swayne, who resided, in 1852, with his father, at Macedon Locks. It was here admitted by the defendants' counsel that the horse and buggy described by· this witness were the property of the plaintiffs, and were the same horse and buggy injured by the collision at Wood's corners. The plaintiffs' counsel, before dismissing the witness from the stand, publicly inquired of the defendants' counsel whether any of the facts testified to by this witness would be controverted on the trial; to which the defendants' counsel replied that they should introduce no evidence on the points testified to by him. The right to cross-examine the witness was not reserved by the defendants' counsel. Evidence was then given, by various witnesses, on behalf of the parties respectively, touching the collision in question. At the close of the trial the defendants' counsel called the said witness, Hoag, for further examination. The witness did not appear, and the defendants' counsel called upon the plaintiffs to produce him, which they declined to do, saying he had gone home, without their leave ; and that the plaintiffs' counsel had received no intimation until after the witness had left, that his further examination was desired. This was one ground upon which, after the evidence on both sides was closed, the defendants moved for a nonsuit.

We think, under these circumstances, that the plaintiffs were under no obligation to detain the witness for the purpose of further examination by the defendants' counsel. We are not called upon to decide whether, in every case where a party introduces and examines a witness, he is bound, at the peril of losing the benefit of his evidence, to keep him in court until the trial is closed, for the benefit of the adverse party. We incline to think the counsel should avail themselves of the opportunity to cross-examine before the witness leaves the stand ;

unless the court, for some good reason, should allow them the privilege, at a subsequent stage of the trial. In this case, the plaintiffs' counsel had good reason to suppose the witness would not be wanted further, by the defendants.

The important question, however, in the case, remains to be considered. We are clearly of the opinion that the plaintiffs' own evidence did not show a case which entitled them to recover. It is a well settled and incontrovertible principle that an action for negligence cannot be sustained if the wrongful act or negligence of the plaintiff, or his agent, co-operated with the misconduct of the defendant or his agent, to produce the damages sustained. In order to recover, in such a case, the plaintiff must be without fault. (*Haring*, adm'r, v. *The New York and Erie Rail Road Co.*, 13 *Barb.* 9. *Clark* v. *The Syracuse and Utica Rail Road Co.*, 11 *id.* 112. *Spencer* v. *The Utica and Schenectady Rail Road Co.*, 5 *id.* 337.) Authorities in support of this proposition might be multiplied indefinitely. That the defendants must be proved to have been guilty of negligence, in order to warrant a recovery, is too plain to require a single authority to prove. If it had appeared, without a conflict of evidence, that the defendants rang their bell as the statute requires, on and previous to the occasion of the collision, the case would be utterly destitute of evidence of any negligence on their part. But on that question there was evidence on both sides, and the verdict of the jury should be regarded as settling it in favor of the plaintiffs. There was, however, we think, inexcusable negligence on the part of the person driving and in charge of the plaintiffs' horse and wagon. The plaintiffs' evidence shows, without contradiction, that the defendants' rail road was on a straight line from the Paddleford station, which is northeast of the road-crossing where the collision in question occurred, to that at Farmington, which is southwest of this crossing. That from the crossing, for a distance of from half a mile to a mile east, the railroad was in like manner in a straight direction, and the track for sixty or eighty rods east of the crossing was elevated from three to five feet above the level of the meadow through which the rail road ran.

The train in question was one of the fastest trains of the defendants, on the road, and was running west, and within a minute or two of being on its regular time. The time of day was about four o'clock in the afternoon. The highway runs in a direction from southeast to northwest, and crosses the rail road diagonally at the point in question. For a distance of over half a mile eastwardly from this crossing, the rail road is in plain sight, with nothing to obstruct the view. James Swayne, who was driving the horse and wagon of the plaintiffs at the time of the collision, had started with them from Macedon Locks, in Wayne county, in the morning, and had been to Canandaigua, and at the time of the accident was on his way back from Canandaigua to Macedon Locks. He was going in a westwardly direction when he came to the crossing. The horse was on a walk as he came upon the rail road, and had been on a walk for a considerable distance, and from the time the witnesses first saw them. The wagon had a covered top, which was raised, and the person driving had a raised umbrella in his hands. It was raining a little at the time. There was with him in the wagon a woman and a small child. Just as the horse and wagon had got upon the track the train of cars struck them, killing the woman and the horse, and demolishing the wagon. There was the usual sign board up at the crossing in question. The language of the sign was " Rail road crossing, look out for the cars while the bell rings."

This is as favorable a statement for the plaintiffs as the evidence will warrant. It seems to me to present a case of utter recklessness on the part of the driver of the horse. If he had been desirous of courting destruction, it is difficult to conceive a course better adapted to the object than the one he pursued. He knew he was in the vicinity of the railroad, for he had been driving upon a walk in plain sight of it, for half a mile. He knew also that the road led across it, for he had passed over it that morning. The most ordinary care and caution would have prompted him to cast his eyes back and forward upon the rail road, to see if a train was approaching; and if he had done so, he could not have failed to discover the train in question. It

is true that he had the right to pass over the rail road track at this crossing. It is equally true that the defendants were lawfully engaged in running their train of cars, and that they had the right to cross the highway. ₀The question is not whether they observed all the precautionary measures which the law imposed upon them, but it is whether there was fault or carelessness on the part of the person in charge of the plaintiffs' property which was destroyed. Upon this question it seems to me a single glance at the evidence will remove every doubt. When the plaintiffs rested, the defendants' counsel moved for a nonsuit, upon the ground that the evidence showed that there was negligence on the part of the plaintiffs or of the person driving the horse, which contributed to the collision, which motion was denied. We think the nonsuit should have been granted, and consequently that the verdict should be set aside and a new trial granted, with costs to abide the event.

[MONROE GENERAL TERM, March 3, 1856. *Johnson, T. R. Strong* and *Welles,* Justices.]