DASCOMB *vs.* THE BUFFALO AND STATE LINE RAIL ROAD COMPANY.

It is well settled, in this state, as a principle of the common law, that he whose negligence has contributed in any essential degree to the injury he has sustained, cannot maintain an action to recover damages from the other party whose acts of negligence have also contributed to produce the injury. When negligence is the issue, it must be an unmixed case.

It should be regarded as very little short of recklessness for any one to drive upon the track of a rail road without first looking, and listening, to ascertain whether a moving locomotive is near. *Per* MARVIN, J.

Where the plaintiff, living about a fourth of a mile from a rail road track, and owning a farm divided by the track, left his house, with a horse and wagon,

Dascomb *v.* Buffalo and State Line Rail Road Co.

taking in his son and a servant, and drove along towards the rail road, upon a trot, and passed directly upon and across the track, without taking the slightest precaution to ascertain whether or not a locomotive was approaching; *Held* that he was guilty of great carelessnes and negligence, and that he could not recover damages of the rail road company for an injury sustained by means of a collision with their locomotive.

*Held also,* that under these circumstances, it was immaterial whether the train was on time, or behind time, when the collision occurred.

*Held further,* that the question of negligence on the part of the plaintiff was a question of law for the judge, at the circuit; and that upon the facts proved he should have nonsuited the plaintiff.

When the direct fact in issue is established by undisputed evidence, and such fact is decisive of the cause, a question of law is raised, and the court should decide it. The jury have no duty to perform. The issue of negligence comes within this rule.

To authorize a recovery against a rail road company, for damages sustained by reason of the neglect of its agents to ring a bell, or sound a whistle, when about to cross a traveled street or road with an engine, it must appear that such neglect was the sole cause of the damage. If the plaintiff was himself guilty of negligence which contributed to the injury, he cannot recover; notwithstanding the omission of duty by the company.

In an action against a rail road company, to recover damages sustained by the plaintiff, while crossing the track, by means of a collision with the defendants' locomotive, it is proper to charge the jury that if the plaintiff could have seen the approaching train, by looking in the direction of it, before he reached the crossing, and in time to have avoided the collision, his attempt to cross was negligent.

APPEAL by the defendant from an order made at a special term, denying a motion for a new trial, upon a case and exceptions separately stated. The facts, and the questions of law arising thereon, are set forth in the opinion of the court.

*Henry W. Rogers,* for the appellant.

*Albert Sawin,* for the respondents.

*By the Court,* MARVIN, J. Several questions are presented by the defendant. The most important is that relating to the negligence of the plaintiff. There was evidence tending to prove the negligence of the defendant, and also the contrary. When the plaintiff rested, the defendant moved for a nonsuit,

Dascomb *v.* Buffalo and State Line Rail Road Co.

upon the grounds, 1. That the plaintiff had failed to show that the injury was occasioned without fault on his part. 2. That the evidence showed that the plaintiff was himself negligent, and that his negligence contributed to produce the injury complained of. The motion was denied, and the defendant excepted. It will be material to notice all the undisputed evidence bearing upon this issue. It may be stated that the plaintiff, while crossing the defendant's rail road track at the " Camp road crossing," with his horse and wagon, on the 5th of June, 1855, between 4 and 5 o'clock P. M. was very much injured. The defendant's locomotive struck the plaintiff's wagon while he was crossing the track. The course of the road at this crossing, and for a considerable distance each way, is northerly and southerly, and the " Camp road" easterly and westerly. The road crosses the track at a slight angle. The plaintiff lived upon the Camp road, some 90 rods westerly from the crossing, and his farm lay upon both sides of the rail road. He had so lived, and occupied his farm from the time the rail road was constructed. There was a water-tank, 14 feet by 21, on the north side of the rail road, 7 feet from the north rail of the track, and east of the Camp road, and 44 feet from the main traveled track. The cars and locomotive were moving upon the track from Buffalo southerly, and the plaintiff approached the rail road from the west. He was going upon that part of his farm lying east of the rail road. His son, aged about 12, sat upon the seat with him, and a hired man sat in the wagon, on the bottom, behind them. The plaintiff was driving a single horse. There was high wind from the west. There was considerable evidence upon the question whether the train was on time; the plaintiff claiming that it was behind time, and the defendant that it was on time. The plaintiff examined Manuel Henshaw and Henry Lovejoy, surveyors. Henshaw measured the distance from the *crossing* to the plaintiff's house, 86 rods, and the plaintiff's barn on the Camp road, 74 rods. He stated that going along the road from the plaintiff's barn towards the

crossing, a train from Buffalo could not be seen for a distance of 60 rods, except about 200 feet from the crossing, in consequence of forest and embankment; that at a point 200 feet westerly from the crossing, the rail road track could be seen in the direction of Buffalo, for a distance of 200 feet to the cutting, and a little further into the cutting; that at a point 175 feet westerly from the crossing, the track can be seen for about the same distance, and so to a point 125 feet from the crossing, where the track can be seen 230 feet, and at points 100 feet and 75 feet west from crossing, the track can be seen 240 feet; at 50 feet the track can be seen 250 feet; and at 25 feet from crossing, the track is obstructed by the tank. Lovejoy made measurements and took observations, at one time having a locomotive moving along on the track. He stated that the trees commence along the Camp road 200 feet westerly from the crossing, and at that point a train approaching from Buffalo can be seen a distance not exceeding 300 feet from the crossing; that at a point 100 feet from the crossing, a train can be seen 300 or 400 feet along the rail road from the crossing. At a point 50 feet westerly from the crossing, a train can be seen some 500 feet along the rail road; and at a point 35 feet, a train can be seen 700 feet. He speaks of seeing the smoke from the smoke pipe at the different points in the Camp road, at a distance from 300 to 1200 feet from the crossing. The Camp road, going eastwardly, descends about 3 inches to the rod, for a distance of 200 feet from the rail road track.

Having thus grouped the *material* objects, let us ascertain the conduct and acts of the plaintiff. The plaintiff, his son, and Bundel, his hired man, left the plaintiff's house, at the distance of 86 rods westwardly of the crossing, in a one-horse wagon, for the purpose of crossing the rail road, and working on that part of his farm lying east of the road. His son sat upon the seat with him. Bundel was in the wagon behind them, sitting upon the bottom of the box. The plaintiff drove along, upon a trot. There is not a particle of evidence that he or his son looked in either direction

for locomotives or cars, or that either of them took any precaution whatever. After passing the tank, having got onto the track, the son discovered the locomotive, and said "father, the cars are coming;" and the plaintiff instantly struck the horse. The horse escaped, but the wagon was struck, the son killed, and the hired man and the plaintiff injured. Bundel did not look down the road towards Buffalo. He says he supposed the cars had gone up. He did look in the other direction. Suppose we should stop here; could the plaintiff recover? But there is some further evidence. Mr. Muffit and Mr. Hammond crossed the rail road track, a short distance ahead of the plaintiff. They noticed that the train was coming. They halted a moment, and then proceeded some rods and stopped to see the train pass, and witnessed the collision. Hammond looked back upon the highway, just as they had started on, and saw the plaintiff coming. He was near the track. Hammond took off his hat and waved it to attract the plaintiff's attention. He did not hallo, as the wind was blowing strong, and he thought the plaintiff would not hear. The plaintiff did not appear to see the waving of the hat. He gave no heed to it.

John Houghton was at work plowing for the plaintiff, on the east side of the rail road, some five or six rods southerly and eastwardly from the crossing. His team was standing still. He saw the plaintiff coming towards the crossing, on an ordinary trot. He saw the train, and he beckoned with his hand towards the plaintiff to keep back from crossing, but did not know that the plaintiff saw him. He heard the plaintiff's son, as he looked by the tank, say, "father, the cars are coming," and the plaintiff struck the horse. The head of the horse had got across the track when the son spoke. The plaintiff was a rod or two from the crossing when the witness beckoned to him to keep back. *The plaintiff was looking right at his horse.* The wagon had got near the tank house, or about there, when the witness first saw it. The witness also halloed pretty loudly, to the plaintiff, that the

cars were coming. This evidence of the demeanor of the plaintiff is from his witnesses, and is undisputed. Was there not great carelessness and negligence on the part of the plaintiff? It certainly so seems, to me. It is not claimed by the plaintiff's counsel, that the plaintiff looked to the right or to the left, up or down the track; or that he particularly consulted his hearing. One of the positions of the counsel is that the plaintiff was not negligent, as he supposed, and had a right from the time tables of the defendant to suppose, that the cars had passed. As there was conflicting evidence as to the time when the train did actually pass, I shall assume, for the benefit of the plaintiff, that the train was behind time; and then, in my opinion, the conduct of the plaintiff was most unfortunately and lamentably negligent. It seems to me that it should and must be regarded as very little short of recklessness, for any one to drive on to the track of a rail road without first looking and listening to ascertain whether a moving locomotive is near.. What difference can it make, if a train has just passed, and whether the train is on time? Another train may be approaching. It must be kept in mind that rail road companies own their roads, and have as perfect a right to use them, in a lawful manner, as the farmer has to cultivate his farm, or the mechanic to use his tools. The law holds rail road companies to a strict accountability for any of their acts of negligence by which any one who is without fault sustains an injury in his person or property. Assume, in this case, that it was negligence in the defendant to be behind time, and will this, in law, excuse the defendant from observing care on his part? In my opinion it will not. Such a rule would be extremely dangerous, and there would be much difficulty in its application. It may be that those who live in the immediate vicinity of rail roads, and who frequently cross them, may, when they suppose a train has just passed, be less careful, and this may grow into a habit; or they may consult time tables, and from them reason that there can be no locomotive near, and act with-

Dascomb *v.* Buffalo and State Line Rail Road Co.

out regard to care; but if they do so, in my opinion they act at their peril. They will be charged with negligence in case they rush on to the track without looking, or trying in a proper way, to ascertain the fact whether danger is near. And they will not be permitted to recover damages for any injury which they sustain.

It is well settled in this state, as a principle of the common law, that he whose negligence has contributed, in any essential degree, to the injury he has sustained, cannot maintain an action to recover damages from the other party, whose acts of negligence have also contributed to produce the injury. When negligence is the issue, it must be an unmixed case. This rule is vastly important in every day life. It is in constant activity in great and small affairs. The rule, properly understood, should, in my opinion, be maintained in its purity. It is generally salutary in its effects; inducing care, caution and circumspection. The careless and negligent are taught that if they sustain an injury to which their negligence contributed, they must bear the loss;—that the law will afford them no redress.

In the present case the plaintiff, living about a fourth of a mile from the rail road track, owning a farm divided by the track, leaves his house, with a horse and wagon, taking in his son and hired man, and drives along, upon a trot, directly upon the track of the road, without taking the slightest precaution to ascertain the dangerous proximity of the locomotive. This was negligence. And if the rule to which I have referred is to be maintained, it must be so held. If such negligence is a question of law, then the court should have taken the cause from the jury. If it is to be regarded as a question of fact, then the verdict is against undisputed evidence establishing a fact or facts which show, in law, that the plaintiff cannot recover. And it should, for this reason, be set aside. In my opinion it was a question of law for the judge at the circuit, and he should have nonsuited the plaintiff. Negligence is undoubtedly often a mixed question of law

and fact, and when so, it should be submitted to a jury. When the main fact or facts touching the negligence is sought to be proved by other facts, called circumstantial evidence, the question is always a question for the jury. They are to say whether the facts proved justify, by fair reasoning, the finding of the main fact in issue to be true. They draw the inferences from the circumstantial facts. But when the direct fact in issue is established by undisputed evidence, and such fact is decisive of the cause, a question of law is raised, and the court should decide it. The jury have no duty to perform. The fact or facts controlling the rights of the parties, being ascertained, it is the duty of the court to pronounce the law, as much so as upon a special verdict. The issue of negligence is not an exception to the rule.

I refer, without remarking upon them, to the following cases: Hartfield v. Roper, (21 Wend. 615;) Spencer v. The Utica and Schenectady R. R. Co. (5 Barb. 337;) 6 Hill, 592; 5 id. 282; 19 Wend. 399; Sheffield v. The Rochester and Syracuse R. R. Co. (21 Barb. 339;) Haring v. The New York and Erie R. R. Co. (13 id. 9;) Pierce on Am. Rail Road Law, 272 et seq.

The plaintiff's counsel makes the point, that if the defendant was negligent, in not ringing the bell or sounding the whistle, the plaintiff may recover, though he was careless and negligent, provided such carelessness was not so gross as to make applicable the maxim volenti non fit injuria. He refers to the 39th section of the general rail road act, (Laws of 1850, p. 232,) and relies mainly, as an authority, upon Corwin v. New York and Erie R. R. Co. (3 Kern. 42.) The section referred to requires that a bell shall be rung continually for 80 rods before crossing a traveled road or street, or that a whistle shall be so sounded, under a penalty of $25, and declares that the corporation shall be liable for all damages which shall be sustained by any person by reason of such neglect. It would perhaps be a sufficient answer to this position to say that no such question was made, upon the

trial. The action was not tried upon such principles. If this section will justify a recovery, in any case, when the plaintiff has been negligent, the question would be whether the injury had been sustained by reason of the neglect of the company to ring the bell, or sound the whistle. Such neglect, on the part of the company, must be the sole cause or reason of the damage. This of course supposes the plaintiff free from fault. The statute does not excuse his negligence. Cases may arise, under peculiar circumstances, when the omission to ring the bell or sound the whistle will be the sole cause of the injury. Suppose one desires to cross the track in a very dark night. He pauses at the track, but he can neither see nor hear the train, or if he hears it he judges that it is at an entirely safe distance. He knows that the bell is to be rung or the whistle sounded, a quarter of a mile. The circumstances are favorable for his hearing the sound, but he hears nothing, and proceeds to cross and is struck. Such a case might be a proper case for the application of the statute. Others might be supposed. But in my opinion the statute has not changed the law excusing the plaintiff for negligence. The language of section 44, which received construction in *Corwin* v. *The New York and Erie R. R. Co.* (3 *Kern.* 42,) is very different. " Until such fences and cattle guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by their agents or engines to cattle, horses or other animals thereon." The company is made absolutely liable for the act *done*, without regard to the negligence of the owner of the cattle, &c.; whereas, for omitting to ring the bell or sound the whistle, the company is liable for injury sustained *by reason* of such neglect.

The defendant requested the judge to charge that if the plaintiff could have seen the approaching train, by looking in the direction of it, before he reached the crossing, and in time to have avoided the collision, his attempt to cross was negligent. The justice refused so to charge, and

said he should leave that as a fact for the determination of the jury. The defendant excepted. I think the charge should have been given as requested. As I understand, the justice submitted to the jury, as a question of fact, whether, if the facts were as hypothetically stated, *the attempt to cross was negligent.* The learned justice must, I suppose, have been of the opinion that negligence is always a question of fact for the jury.

It is not necessary to notice other charges and exceptions.

In my opinion, the case clearly shows negligence on the part of the plaintiff, which contributed to the injury, and he cannot recover, and should have been nonsuited. It was error to refuse to give the instruction as requested. The order of the special term must be reversed, and a new trial had. Costs to abide the event.

[GENESEE GENERAL TERM, May 17, 1858. *Grover, Marvin* and *Davis,* Justices.]