## Suydam vs. The Grand Street and Newtown Rail Road Company.

It being quite evident that when a cartman's cart and a railway car are progressing side by side in the same direction, with a space of 16 or 24 inches between them, there can be no collision if each adheres to the track which the law assigns to it, in case a collision does occur the presumption of negligence is altogether against the driver of the cart, and not against the conductor of the railway car; the former being able to deviate and depart from his track, which the latter cannot do.

In an action against the railway company, to recover damages for injuries occasioned by the collision, the plaintiff must show that the collision proceeded exclusively from the negligent acts of the defendant, and not from his own negligent acts, or his own negligent acts combined with those of the defendant.

Where it appeared from the evidence, in such an action, that the collision was caused by the imprudent act of the plaintiff in pulling his horse to the left; *Held* that it could not be said he was without fault and did not contribute largely to bring about the collision resulting in his injury; and that the jury should have found a verdict for the defendant.

APPEAL by the defendant from a judgment of the city court of Brooklyn, entered on the verdict of a jury.

*William J. Huff*, for the plaintiff.

*J. W. Gilbert*, for the defendant.

*By the Court*, BROWN, J.   This is an appeal from a judgment of the city court of Brooklyn, entered upon a verdict in favor of the plaintiff for $1500, and from an order denying a motion for a new trial.   The action was for damages for negligently causing a railway car to strike the cart of the plaintiff, from which he was thrown and injured in his person.

It appeared by the proof that there are two railway tracks laid down in the center of First street, in Brooklyn, the carriage way therein being 30 feet wide.   The space occupied by the rails is 13 feet 7 inches.   The defendant operates a horse rail road upon the street.   The plaintiff is a cartman, and at the time of the collision, June 1, 1861, was driving a cart about

6 feet wide and 8 feet 6 inches in length, standing in front of the platform, and proceeding southwardly along First street, on the westwardly rail road track. The car of the defendant approached the plaintiff, going in the same direction. There is some difference of opinion amongst the witnesses of the plaintiff, as to the rate of speed of the car, some thinking it rapid, others not more rapid than the usual rate, while those of the defendant thought it not over 4½ or 5 miles an hour. In the view I entertain, the difference in the rate of speed is not material. At the distance of some 20 feet from the cart the car bell was rung and the car nearly stopped, or brought down to a walk, on hearing which the plaintiff turned off to the left to allow the car to pass. The car ran some distance slowly, and had gone two-thirds of its length past the cart, and within 18 or 20 inches from it, when the collision occurred, and the plaintiff was thrown from his cart into the street and seriously injured. The cart was heavily loaded with agricultural implements, some of which projected one foot and others two feet beyond the rear or hinder end of the cart, the axle being at the center. The collision occurred between the car and the cart at a point two-thirds of the way from the front part of the body of the latter and the hinder end of the cart, or what is more probable—indeed quite certain—the agricultural implements projecting therefrom, which was the platform of a reaping machine and the handles of two horse hoes. The car is 16 feet long with nine stanchions, there being a distance of 18 inches between the stanchions, the third stanchion from the hind end of the car and the sixth from the forward end being the point of collision. About these facts there is no conflict of evidence, that I can see; indeed many of them are derived from the testimony of the plaintiff, as well as from that of the defendant. For all the purposes of this opinion I assume them to be true. The collision between the two vehicles which resulted in the injury of the plaintiff was not without an adequate cause, which he is bound to explain and establish to the satisfaction of the court, before he

Suydam *v.* Grand Street and Newtown Rail Road Co.

can be allowed to retain his verdict. This is a burthen which every plaintiff voluntarily takes upon himself when he resorts to a court of justice for redress, and from which neither the court nor the jury have power to relieve him. The latter may give him a verdict, but unless supported by the evidence it cannot be maintained. In cases of this kind the plaintiff must show that the collision proceeded exclusively from the negligent acts of the defendant, and not from his own negligent acts ; or his own negligent acts combined with those of the defendant. Both vehicles were going over the street in the same direction, in the exercise of a common right, side by side, when the hinder end of the cart came in contact with the side of the car, and the question is through whose imprudence or want of care did it occur.

This same case, upon substantially the same evidence, was before us at the general term in February last, and we then took occasion to say, "that a cartman's cart is a vehicle which traverses all parts of the street ; crossing and recrossing, going backwards and forwards, and turning to the right or to the left at the will of the driver, its passage way limited only by the limits of the street. Not so with a railway car. It is irrevocably fixed to a given track laid down longitudinally with the street. To this line the car must adhere, and from which it cannot be inclined or deflected for any purpose. It is quite evident, therefore, that when a cartman's cart and a railway car are progressing side by side, with a space of 16 or 24 inches between them, there can be no collision if each adheres to the track which the law assigns to it. And if a collision does occur under such circumstances, the presumption of negligence is altogether against the driver of the cart, and not against the conductor of the railway car; for the obvious reason that the former can deviate and depart from his track, which the latter cannot do. One of the two must incline towards the other, or there can be no contact. And as the cart can be inclined and deflected towards the railway car at the pleasure of the driver, or by his indifference or

carelessness, while the latter is inexorably bound to its iron rail, whatever might be the will or misconduct of its conductor; there can be no other presumption but against the care and good conduct of the cart driver."

Both the cart and the car were proceeding in the same direction, the car on the right, and the cart on the left hand. Two thirds of the car passed the cart without contact, and had there been no change in their relative positions there would have been no contact; that is, if each of them had proceeded directly along the street, and without deviation, the remaining third part of the car would have passed freely and there would have been no collision. And had they inclined towards each other the sides of both vehicles would have become the point of contact. This was not so, however. The side of the car and the end of the cart came in contact. By what means then was the hinder end of the cart brought in contact with the side of the car? The car could be moved forward and backward, but not to the one side or the other. It was not possible to move the car so as to produce the actual result. It was produced by a movement of the cart, and by no other means. The cart with the projecting load was 10 feet 6 inches long, 6 feet of which was behind the axle. If the head of the horse was pulled by the driver to the left, even for a small space, it would place the cart diagonal to the railway, and bring the end of it instantly in collision with the car. That this actually took place may be inferred from the injury done to the third stanchion from the rear of the car, and the broken end of the platform of the plaintiff's cart. It is also proved by the sum of the testimony on both sides. Rem Suydam, the plaintiff himself, testifies, "I was pulling to the left when the collision took place. I knew the car struck my load which projected about two feet to the rear of my cart. I suppose the car struck the tail end of my cart." Patrick McGuinn, a witness for the plaintiff, testified, "the car struck the machinery, I think, on the right hand corner of the tail of the cart with violence. It jarred the plaintiff

Suydam *v*. Grand Street and Newtown Rail Road Co.

off the cart." Again he says : "the horse was diagonal with the track, and the plaintiff kept the same direction until the collision." William S. Townsend, a witness for the plaintiff, says : "I observed the horse and cart turning off to the left. I saw the horse and part of the cart. The cart was ahead and going the same direction as the car." Ira Buckman, a witness for the defendant, said : "I was standing on the step, (of the car,) on the left side. As we passed my face was.towards him, (the plaintiff,) and on a line with the side of the car. My face was 16 or 18 inches from the platform of the reaping machine on the plaintiff's cart, which projected further than any thing on the load ; that is, when my face passed the rear of the cart. After I told the car driver to go on, the car began to get under way. Just before the collision the horse swayed to the left, and threw the hind end of the cart against the side of the car. All was done in an instant. This was after I told the driver to start up. This platform projected over the right side of the tail of the cart and lay rather diagonally across the cart, and he stood by the other end of it in front. Our car hit the platform ; that was the point of collision. The platform slewed around, the cart rung acting as a fulcrum, and the other end in that way knocked him off the cart. It broke the stanchions of the car, the third one from the hind end, and the sixth from the forward end. It broke out so that a piece fell on the ground." Again he says : "The car stopped within 18 inches or it would have broken another stanchion." George Bennett, another witness for the defendant, said : "The cart continued parallel with the car until we (the car) got nearly two-thirds past the rear end of the cart. Plaintiff was standing on the left hand front corner. I saw him look towards the car ; he pulled his horse to the left, and threw the end of the cart into the car. I saw the rear load of the cart coming towards the car as the plaintiff turned his head. It struck the car by the stanchion near the rear." Patrick Malone, a witness. for the defendant, said : "When we com-

menced passing the cart it was perfectly straight with us.    I
think we were 12 or 13 inches from the rear of the cart."
This is the evidence, and it leaves no manner of doubt upon
my mind that the accident was caused by the imprudent and
mistaken act of the plaintiff, in pulling his horse to the left,
as he himself says he did, at the moment of the collision.    It
is in vain to say, in the face of the evidence, that he is with-
out fault, and did not contribute largely to bring about the
collision which resulted in his injury.    It was the manifest
duty of the jury to find a verdict for the defendant ; and fail-
ing to do this, I think the city court should have set aside
the verdict, upon the motion for that purpose.    The remarks
of the late Mr. Justice Barculo in the case of *Haring* v. *The
New York and Erie Rail Road Company*, (13 *Barb.* 15,)
are peculiarly applicable to the present case.    In speaking
upon the duty of nonsuiting a plaintiff, or setting aside the
verdict where the plaintiff's own negligence has contributed
to the injury, he says : " We cannot shut our eyes to the
fact that in certain controversies between the weak and the
strong—between a humble individual and a gigantic corpo-
ration—the sympathies of the human mind naturally, hon-
estly and generously run to the assistance and support of the
feeble, and apparently oppressed.    And that compassion will
sometimes exercise over the deliberations of a jury an influ-
ence, which, however honorable to them as philanthropists,
is wholly inconsistent with the principles of law and the ends
of justice.    There is therefore a manifest propriety in with-
drawing from the consideration of the jury those cases in
which the plaintiff fails to show a right of recovery."

The judgment, and the order denying the motion for a
new trial, should be reversed, and a new trial granted, with
costs to abide the event.

[KINGS GENERAL TERM, February 8, 1864.  *Brown, Scrugham* and *Lott*,
Justices.]