This was an action on the case against the company for negligently running a train of cars against a carriage in which the wife of the plaintiff, Thomas P. Lynam, was riding and driving across the railroad of the company, and by which she was very severely injured.
The wife of the plaintiff with a son of theirs seventeen years of age, and a young lady left the City of Wilmington after dark about 6 o'clock on Christmas Eve, 1872, in a double seated carriage drawn by a single horse, to return to the farm of the father of the plaintiff, on the Newport turnpike, through which the railroad of the company runs between the dwelling house, barn and stables upon it, and the turnpike in front of it; and upon which the only carriage way from the turnpike to the dwelling house and other farm buildings, is a lane about three hundred yards in length, which descends by a slight and uniform slope of the ground naturally from the turnpike for about two hundred and twenty-five yards to the railroad which it crosses at nearly right angles, and terminates near the dwelling house and the buildings adjacent to it. The course of the railroad through the farm and beyond it in a western direction is perfectly straight for two miles, at least; and owing to that fact and the comparatively level surface of the country through which it is there laid, and the slope of the lane as before mentioned, the descent of the latter from the turnpike to the railroad and across it to the dwelling house, commands a full and uninterrupted view by *Page 584 
daylight of the entire line of the railroad and any train upon it for the same distance in that direction. There is a private crossing over the railroad at the intersection of the lane with it, constructed and maintained by the company for the use and benefit of the owners of the farm; and it was on that the collision in question occurred.
The distance from Wilmington to the farm is six miles; the night was dark, windy and very cold, the ground was hard frozen, and there was a good deal of ice on the road, which caused the horse to slip much, as he was unshod. Mrs. Lynam was driving with both her son and the young lady seated on the front seat with her, pushed back against the bind seat, and both of the side curtains of the front seat of the carriage were rolled up; but the ladies rode with their cloaks wrapt closely about them and with the hoods of them drawn over their heads. They reached the entrance to the lane from the turnpike about seven o'clock, and at once drove into it and down it at the same gail they had previously been traveling, to the crossing and upon it without stopping, or looking out in either direction of the railroad from it or listening in order to ascertain if any train or engine might then be approaching it, or without anything said to indicate that any thought or apprehension of a passing train on that part of the railroad at that hour had occurred to either of them, except that when they had proceeded at that gait about two-thirds of the way down the lane from the turnpike to the dwelling house, the young lady looked out of the carriage in a western direction down the railroad, from which direction the train in question was then rapidly approaching the crossing, and simply remarked that she "could see a light in cousin Dal's house," alluding to the residence of a neighboring farmer and relation of hers, a half of a mile or more distant from them in the same direction near the railroad, but on the opposite side of it from where they then were. But no further notice or observation was taken of it and no other remark was made about it. The horse they were driving was remarkably gentle and without any fear of *Page 585 
locomotives or railroad trains, and had entirely crossed the track and cleared all but the hind part of the carriage of the last rail of it on the crossing when the train in question, a regular passenger train consisting of nine cars well filled with passengers, an hour behind the usual time of passing there, and approaching with rapid speed from the western direction before described, struck the rear portion of the carriage, knocking it entirely off the track and crossing into a side ditch, and at the same time overturning and nearly demolishing it, but without doing very serious injury to either of the others in it. The usual headlight of the locomotive was entirely out at the time, and had been before the train reached a station on the railroad where it stopped to take in passengers several miles west of the crossing; but a small and ordinary railroad lantern had been suspended m front of the engine and was lighted and burning at the time, as a temporary substitute for it. There was also another lantern of a similar kind lighted and burning in the cab of the locomotive, as well as the usual lamps lighted at night in all the passenger cars. And no whistle was blown, or bell rung on the locomotive, or other signal or warning given of the approach of the train before it reached the crossing and the collision which immediately followed. The usual headlights on the locomotives of the company can be distinctly seen from the lane and the crossing at night as far as two miles down the road in that direction and never fail in approaching and passing there to illuminate with a brilliant light even the yard in front of the mansion on the farm, as well as all the track of the railroad for several hundred feet immediately in front of them. And from the testimony of both of the persons with Mrs. Lynam in the carriage, it was evident that it was upon that fact and also upon the fact that they were familiar with the place, and were well aware of the usual times, both day and night, for all the regular passenger trains on the railroad to pass there in either direction, and that about six o'clock in the evening was the time for that train to pass there, and should *Page 586 
have passed there at least an hour sooner that evening, that they relied with such implicit confidence and assurance on their entire freedom from all danger of encountering any passing train on that part of the road at such an hour, that they took no heed or thought whatever for their safety or security against such a contingency on the occasion in question. But freight trains they said passed there at all hours of the night, and that the rumbling of a heavy train on the road can frequently be heard there when as much as two miles off.
T. F. Bayard, for the defendants, after evidence to the foregoing effect had been adduced, and the counsel for the plaintiffs announced that he had closed his testimony for the present, moved a nonsuit, because it had failed to show that the injury complained of and sued for, was occasioned without fault and negligence on the part of the wife of the plaintiff and those with her in the carriage at the time of the accident. To entitle them to recover in the action, the negligence of the defendant must be affirmatively proven, not only to have been the cause of the injury, but the sole cause of it, and without any fault or negligence, or want of due care, diligence and prudence on her part and those with her in the carriage which contributed in any, even the slightest degree, to the production of it; for negligence on the part of the plaintiff which contributes in any degree to the accident or the cause of the injury, cannot be relieved or qualified by the negligence of the defendant, but to make the latter answerable for it, his negligence must be of an unmixed character, and in which the plaintiff is entirely free from any contributory negligence, and the defendant is wholly and solely to blame. Dascomb vs. B. S. L. R. R. Co., 24 Barb.
221. Hartfield vs. Roper et al. 21 Wend. 615. That the evidence already adduced exhibited such an absence of proper care and diligence, prudence and precaution on the part of this lady and her companions in crossing a railroad at night, and on such a night too, which the law *Page 587 
requires of every one to exercise, as well out of due regard for his own safety as out of a proper regard for the safety of others, who are rightfully traveling on it at the time, and also of the company which owns it, and has a just right to the use and enjoyment of it at all times free from the interruption or obstruction of others, in order to avoid and prevent such an accident, as would clearly debar the plaintiffs of any right to maintain their action. By their own evidence as it stood uncontradicted, the plaintiff's own negligence in the case was self-evident and palpable, for nothing could be more certain or manifest than that the parties in the carriage by exercising the common precaution of stopping but a moment before they reached the crossing in the lane, and looking or listening for the train, could have discovered its approach, it being then so near them, and easily have avoided the collision. Nor was the degree of care and prudence which the law required of them on the occasion, at all qualified or diminished by the fact that the train was behind time, or any accident had suddenly extinguished the headlight on the engine. And that it was in the last degree imprudent and indiscreet in them to assume that the train in question, or any other train had passed there over the road on time that evening, and it was nothing less than gross carelessness and negligence to have fallen into such a dangerous and fatal blunder. That the collision having thus taken place on the railway track of the defendants, the onus of proof was on the plaintiffs to rebut the presumption of negligence on their part, and prove that it was solely attributable co the negligence of the defendants. But there was no proof of any culpable negligence whatever on the part of the defendants, and therefore it was obvious that the plaintiffs could not recover, and should be nonsuited.
It was now well settled by adjudged cases that it is the duty of one crossing a railroad by right, that is to say, rightfully, and not wrongfully as a trespasser, to use such care and caution to avoid danger and accident, as the occasion and the circumstances of the case reasonably require; *Page 588 
and if he fails to do so and is injured in the act, he is guilty of negligence and cannot recover for it, even though it may be proved that the servants of the railroad company were at the same time guilty of negligence in the running or management of the train. And what is the degree of care and prudence which is required of such a party on such occasions, is now well settled by repeated decisions, both in this country and in England on that question, and which go to the extent of requiring that he shall not only carefully look and listen, but also stop and care Cully and cautiously look out and listen on such occasions for approaching trains; and that nothing short of this constitutes that degree of ordinary care, prudence and circumspection which the law requires of every one before attempting to cross a railroad at the intersection of any other way, or, indeed, anywhere else. Dascomb vs. B. S. L. R. R. Co., 27 Barb.
221, Mackey vs. N. Y. C. R. R. Co., 27 Barb. 528. Brooks vs.B. R. R. Co., 27 Barb. 532. Wilds vs. H. R. R. R.Co., 29 N. Y. R. 315. Havens vs. E. R. R. Co., 41N. Y. R. 296. Barker vs. Savage, 45 N. Y. R. 191.Baxter vs. T. B. R. R. Co., 41 N. Y. R. 503.Wilcox vs. R. W. O. R. R. Co., 39 N. Y. R. 358, 659. Suydam, vs. G. U. R. R. Co., 41 Barb.
380. P. R. R. Co. vs. Beale, 73 P. R. 504, N. P. R.R. Co. vs. Heilman, 49 P. R. 60. P. R. R. Co. vs.Goodman, 62 P. R. 329. P. C. R. R. Co. vs. Bentley,66 P. R. 30. McCully vs. Clarke Thaw, 40 P. R. 399.Gahagan vs. B. L. R. R. Co., 1 Allen 187. Adams vs.Town of Carlisle, 21 Pick. 146. P. R. R. Co. vs. Dunn,
56 P. R. 280 B. O. R. R. Co. vs. Breissig,25 Md. 378. Bilbee vs. L. B. R. Co., 114 E. C. L. R. 492.Shelton vs. L. N. R. Co., Law Rep. 2 C. P. 631.
In the case of Dascomb vs. B. S. L. R. R. Co., decided in New York as early as the year 1858, it was held by the court to be well settled, in that State, as a principle of the common law, that he whose negligence has contributed in any essential degree to the injury he has sustained, cannot maintain an action to recover damages from the other party whose acts of negligence have also contributed to produce *Page 589 
the injury; and that when negligence is the issue involved in the suit, it must be an unmixed case. Also, that it should be regarded as little short of recklessness for any one to drive upon the track of a railroad without first looking and listening, to ascertain whether a moving locomotive is near. Also, that under the circumstances it was immaterial whether the train was on time, or behind time, when the collision occurred; and further, that the question of negligence on the part of the plaintiff was a question of law for the judge, at the circuit, and that upon the facts proved he should have nonsuited the plaintiff. And it was furthermore held, that when the direct fact in issue is established by undisputed evidence, and such fact is decisive of the cause, a question of law is raised, and the court should decide it. The jury have no duty to perform; and that the issue of negligence in such case, comes within this rule. In the case of Mackey vs.N.Y. C. R. R. Co., decided in the same year, and in which the action was founded upon the alleged negligence of the railroad company in omitting to sound the whistle or ring the bell of the locomotive, at a street crossing, as required by statute, the negligence of the deceased driving upon the track was clearly proved by the testimony for the plaintiff, and the court held that the justice, at the trial, should have nonsuited the plaintiff on the ground of the intestate's own negligence, and that the verdict in favor of the plaintiff was against the evidence, and could not be upheld. And expressly recognized and approved the rule of liability in such cases, as stated by the court in Sheffield vs. R. S. R. R. Co., 21 Barb.
339, decided two years before, or in 1856; and in which the court held that as the deceased was not a stranger to the place, and well knew the large number of trains passing there daily, it was the height of imprudence and heedlessness for him to approach the railroad track and attempt to cross it with his team, until he had ascertained that it was safe to do so, and the fact that there was a wood-pile in the way of his seeing far along the track, did not diminish in the slightest *Page 590 
degree, his duty to be careful, but on the contrary, imposed upon him the obligation of still greater caution; and that in such a case a party is bound to exercise care and diligence and foresight in proportion to the danger to be avoided, and the fatal consequences involved in his neglect. In Wilds vs. H. R. R. R. Co., decided in 1864, it was ruled that a person before crossing a railroad must pause and listen, and if he does not, and is injured by a passing train, he is guilty of negligence; for no one. can depend with perfect certainty at what time a train will pass a particular point. And in Havens vs. E. R. R. Co., that he is required to make vigilant use of his senses in discovering the approach, of trains to avoid being injured, even in the absence of their giving the usual signals of their approach. And the ordinary or reasonable care and prudence demanded of him on such occasions, requires this irrespective of any question of negligence on the part of the defendant. Baxter vs. T. B. R. R. Co. 41 N. Y. R. 503.Barker vs. Savage, 45 N. Y. R. 191. Wilcoxvs. R. W. O. R. R. Co., 39 N. Y. R. 659. Suydaw vs. G.U. R. R. Co., 41 Barb. 380.
He would refer next to the Pennsylvania cases. In the case of P.R. R. Co. vs. Beale, 73 P. R. 504, decided in 1873,Sharswood, J., in delivering the opinion of the court, said that the duty of the traveler to stop is more obligatory when an approaching train cannot be seen or heard, than when it can; and chat there never was a more important principle settled than that the fact of the failure to stop immediately before crossing a railroad track, is not merely evidence of negligence for the jury, but negligenceper se, and a question for the court. And on the last point inN. P. R. R. Co. vs. Heilman, 49 P. R. 60, decided eight years before that, Strong, J., had said in announcing the opinion of the court, that the absence of the proper precaution in such case was more than evidence of negligence. It was negligence itself; and the plaintiff was not entitled to recover, if his want of precaution contributed to his hurt. In P. R. R. Co. vs. Goodman, 62 P. R.
329, it was also ruled *Page 591 
that if the company neglected to give the usual and required warning of the approach of the train, yet the plaintiff was bound, as every man in crossing a railroad in ordinary prudence is bound, to look in all directions in which trains may approach, and to pause until he found he could cross with safety. It was likewise ruled in the case ofReeves vs. D. L. W. R. R. Co. 30 P. R. 454, as early as the year 1858, and in the case of P. R. R. Co. vs. Ackerman, 74P. R., decided late in the past year, that it is the obligation of prudence and the duty of a traveler approaching a railroad crossing, to stop and look and listen in order to satisfy himself there is no danger from a passing train.
Bird, for the plaintiffs. Could there be a doubt in the mind of any one who had heard the evidence, that the injury in question would have been done to the wife of the plaintiff, if there had been, as there assuredly should have been, an ordinary or usual headlight burning in front of the locomotive, on such a night, or if there had been even a single sound from the whistle, or any other warning or signal given on the approach of the train to the crossing? The night was so dark that the engineer could not even see the horse and carriage when right before him and his engine struck it, and had no knowledge of what it had struck, until after he had stopped and backed the train to the crossing, and got down from the cab to ascertain what it was. The absence of either on such an occasion was evidence sufficient of culpable negligence on the part of the defendants, while the omission of both only made the evidence of such negligence the stronger and more conclusive under such circumstances.
The cases which had been cited on the other side in support of the motion for a nonsuit, though numerous, and many of them comparatively recent, were not entirely new or before unknown to him, for he had seen and read them all before this trial was commenced. On the precise and direct point presented and relied on by the counsel for *Page 592 
the defendants, they were limited and confined to two States of the Union only; but as strange and extreme as some of them seem to be in regard to the nature and effect of contributory negligence in railroad collisions especially, none of them would be found to go to the extent of requiring the exercise of any greater degree of care, caution and prudence than was exhibited by Mrs. Lynam and the persons in the carriage with her on the unfortunate occasion in question, under all the facts and circumstances which had been proved in the case. The point of the objection on the other side is not that they did not look out for any passing or approaching train on the railroad, for that was done as had been proved, but that she did not, in addition to that, stop the horse and carriage and look out and listen for such a train, before they reached the crossing and proceeded to drive across the railroad. But with an entirely unobstructed and complete view from the moment they entered the lane from the Newport turnpike, until they readied the crossing, of the whole line and track of the railroad for two perfectly straight miles, at least, and from the crossing itself down to the village of Stanton, driving slowly, as they were, down a level and gently descending carriage way directly towards the railroad, and at right angles with it, with the side curtains of the carriage rolled up, and all three of them seated together on the front seat of it, for a distance of two hundred and twenty-five yards before reaching the crossing, and both they and the train all the while approaching it so as to reach it at the same instant and to come together immediately upon it, who could have thought or supposed that on such a windy night and in such a favorable position all the time for seeing a train, if any should then be approaching from either direction, they could possibly have improved their means or chance of perceiving or discovering it by merely stopping still on the way, either to look or listen before reaching it? If, under such circumstances, and in such a favorable position for, at least, seeing the train, it had been visible to them in any position, even a *Page 593 
stationary one, from the time they entered the lane, they did not see or hear it, even as they were about to drive upon the crossing, and when it must have been almost up to it, what chance or possibility could there have been, of either seeing or hearing to, or discovering the approach of it by stopping on the way before they reached the crossing? And can you say that it would have been an ordinary, or even a reasonable exercise of care, prudence and precaution on their part to have done so under the circumstances? They did look out and down the railroad, and scarcely could have looked in any other direction than the railroad from the time they entered the lane, and saw a light — a dim, distant light in that direction, so faint and feeble, however, that it was mistaken for an ordinary light in a neighbor's mansion, at least a half mile from them, and which possibly may have been the small lamp suspended in front of the engine as a wretched and treacherous substitute for a regular locomotive head-light which would and should, at that very moment, have filled the whole road for a hundred yards before it with a blaze of light as bright almost as day, but which unfortunately for them, if it was that glimmering and treacherous lamp they then beheld, was destined soon to prove, in effect, at least, too much like the false light of the wrecker on some dangerous shore that lures the unsuspecting mariner to his destruction.
But none of the cases cited on the other side were similar in the facts and circumstances attending them, to this case. In Dascombvs. B. S. L. R. R. Co., 27 Barb. 221, the first cited on the question of contributory negligence, the party injured did not even look up or down the track of the railroad, although it was in day light, and there was nothing to prevent him from seeing the approaching train in time to have stopped before driving upon the crossing if he had done so. He, in fact, took no care whatever to avoid it, but heedlessly drove upon the track right before it. And the same was the utter carelessness exhibited by the plaintiff inBaker vs. Savage. 45 N. Y. R. 191; while in *Page 594 
each of the cases of Wilds vs. H. R. R. R. Co., 29 N.Y. R. 315, and Havens vs. E. R. R. Co., 41 N. Y. R.
296, the plaintiff was guilty of more than negligence — of downright recklessness in attempting to cross the railroad when injured. And the same remarks and qualifications would apply, in a greater or less degree, to all the other cases which had been cited from that State; for in not one of them which had been cited from that, or any other State or country, had the accident or collision occurred at night, or under such circumstances as had been proved in this case; but on the contrary, they all occurred in the day-time and when with the exercise of reasonable care and prudence by the parties killed or injured, they might have been avoided. Several of the Pennsylvania cases, however, had gone a step beyond them, for in no case out of that State had it been decided that in the exercise of reasonable care and prudence under the circumstances, a traveler in crossing a railroad at the intersection of a highway, must necessarily stop, as well as look out and listen for approaching trains. And the first case in which it had been so held there wasReeves vs. D. L. W. R. R. Co., 30 P. R. 454, decided in 1858. But in that case also, the; party injured was guilty of gross and palpable negligence in driving upon a crossing without even looking in either direction for a coming train; and in which the Court said in language that properly characterized it, the traveler has the obligation of prudence upon him, and is bound to stop and look out for trains, and may not rush heedlessly upon them. Also in the case of P. R. R. Co. vs. Goodman, 62 P. R. 329, decided in 1869, the Court said that every person in crossing a railroad is bound, in ordinary prudence, to look in all directions in which trains may approach, and to pause until he finds he can cross with safety. The deceased (for the traveler in that case was killed) was in an open wagon, in broad daylight, between two and three o'clock in the afternoon, descending a gradual slope for more than a quarter of a mile in plain view of the railroad on which a train could be seen coming at a great distance, *Page 595 
and yet drove upon the track without even looking for or seeing the train until it was too late to escape it. But while the Court likewise said in that case that a traveler is bound to approach the crossing of a railroad cautiously and to look out and listen for the approach of trains, it also added that it was the duty of the company to give timely warning of their approach, although its failure to do so would not make it liable for the injury, if the party killed was also guilty of negligence which contributed to the result. The like gross negligence characterized the conduct of the party killed in the case of P. R. R. Co. vs. Beale, 73 P. R. 504, decided in 1873, and in which the court, Sharswood, J., announcing the opinion, seems disposed to qualify and limit to some extent, their previous decisions on the question; for in that case, in which the approach by a public road to a railroad crossing was particularly dangerous, because the railroad from natural and other obstructions could not be seen, nor the whistle of an approaching engine be heard upon it, the court took occasion to say that the duty of the traveler to stop is more obligatory when an approaching train cannot be seen or heard, than when it can. The accident in that case also occurred in the day time. And in this case now before this court, had there been a headlight burning in front of the engine at the time, or had the whistle been blown, or the bell rung as the train approached the crossing, there would and could certainly have been no cause for a suit in this case, and no question of negligence to be raised on either side between the parties to it; because if there had been a headlight burning on the locomotive, the horse and carriage would have been stopped before they reached the crossing, or if even the whistle had been blown or the bell rung but an instant before the head of the train reached it, a word to the horse, or the slightest increase of speed in the slow gait at which it was then moving, would have sufficed to clear the carriage from the contact with the train, all but a small portion of the hind part of which had crossed the track when *Page 596 
it was struck and knocked to one side entirely clear of it and of the residue of the train by the locomotive. If the injured party by looking up the track in the direction of the approaching train, could have seen it in time to avoid the injury, his omission to do so was negligence. Grippen vs. N. Y. C. R. R. Co., 40 N. Y. R. 34, decided in 1869. But that collision too occurred in the day time, when the train could have been seen.
The question of negligence on the one side and of contributory negligence on the other are questions of facts for the consideration and decision of the jury. B. O. R. R. Co. vs. Fitzpatrick, 35Md. Rep. 32, decided in 1871. B. O. R. R. Co. vs. TheState for the use of Dougherty, 36 Md. Rep. 366. In the English case cited of Shelton vs. L. N. W. R. Co., LawRep. 2 C. P. 631, decided in 1867, the deceased when killed was walking on a footpath which the railroad crossed at a Level, and Bovil, C. J., in his opinion observes, "when he reached the first lines of rails he could have seen three hundred yards, but it appears from the evidence chat he did not look to the right or left, but walked heedlessly on, and it was owing to this want of caution on his part that the accident occurred." He was run over and killed by a passing train. But that also was in the day time when by simply looking he might have seen the train. The early decisions of the courts in New York in the two cases cited, Sheffield vs. R. S.R. R. Co., 21 Barb. 339, and Mackay vs. N. Y. C. R. R.Co., 27 Barb. 528, had, however, been overruled by the later case of Mackay vs. N. Y. C. R. R. Co., 35 N. Y. R. 75, decided in 1866, in which it was ruled that where a railroad company has by its own act obstructed the view of travelers upon a public highway by piling its wood so that the approach of a train to a crossing cannot be seen until the traveler is upon the track, one who has driven upon the track with due care, and looked for the train as soon as looking could be of any service, will not be deemed guilty of negligence in not first stopping his team to ascertain if a train might be approaching; and that if in such case, the traveler is *Page 597 
killed or injured by a collision with the cars on such crossing, the company will be deemed guilty of negligence, and held answerable therefor. It has also been decided there that the omission of the customary signals is an assurance by the company to the traveler that no engine is approaching from either side within eighty rods of the crossing; and he may rely on such assurance without incurring the imputation of negligence. But when the usual warning is withheld, the wayfarer has a right to assume that the crossing is safe and that the company is not violating the law and endangering human life by running an engine without signals. The traveler is not bound to stop on the highway, or to look up and down an intersecting railroad track before crossing, when there are no signals of an approaching train.Ernst vs. H. R. R. R. Co., 35 N. Y. R. 19. Crossing a railroad track without looking to see if a train is coming, is not conclusive proof of a want of care. Warren vs. F. R. R. Co., 8Allen 227. What is to be deemed reasonable or ordinary care in such cases depends on circumstances, of which the jury are to judge.Beatty vs. Gilmore, 16 P. R. 463. Curtis vs. R. S.R. R. Co., 20 N. Y. R. 282. A railroad company is as much bound to prevent injury to persons on its track, by using all the facilities that experience has provided for the purpose, as the person on the track is bound to use all the means in his power to escape the injury, when he is aware that it is impending. Costellovs. R. S. R. R. Co., 65 N. Y. R. 92. Where under the circumstances of the case there is any evidence of negligence on the part of the railroad company by neglecting the precautions required for the protection and safety of a person using a crossing of its road, who is injured by a passing train, it is a question for the jury to decide. Stapley vs. L. B. S. C. R. Co.,Law Rep. 1 Exch. 20; and negligence is always a question for the jury whenever there is any reasonable doubt with regard to it.P. C. R. R. Co. vs. Barnett, 59 P. R. 259. And no case has been, or can be produced, when the evidence of negligence on the part of the defendants was as strong as in this case, in *Page 598 
which the court has refused to leave the question to the jury.
Gordon, replied.
By the Court,
It is always with reluctance the Court interposes to prevent a case from going to the jury on the evidence before it, but it is the duty of the Court when upon the proof produced on the part of the plaintiff to sustain his action, the question is formally presented to it on a motion for a nonsuit, whether admitting it all to be true and undeniable, it is sufficient in law to entitle the plaintiff to recover in it, to decide whether it is, or is not, inasmuch as it is purely a legal question, by announcing its opinion upon it. This is not the case of a passenger in a railroad train, who has been injured by reason of the negligence of the railroad company, in which case the company is held to the exercise of extreme vigilance to prevent such an injury, but that of a traveler who has been injured in driving across a railroad, by a passing train, in which case each party is alike bound to exercise care and diligence in order to avoid the injury. He then recapitulated the facts proved, as before mentioned in the statement of the evidence, and remarked that it clearly appeared from the facts proved that although one of the ladies in the carriage at one time it seems casually looked out of it, after they had entered the lane and proceeded about two-thirds of the way from the turnpike to the railroad, and observed that she saw a light in her cousin Dal's house, which was a half a mile or more down the railroad, and in the direction from which the train was then coming and approaching the crossing towards which they were driving, it does not appear that either she, or any other person in the carriage looked again in that direction for the light, or that either she, or Mrs. Lynam, or her son even then thought of looking for any passing train of any kind in either direction on the railroad, or even, that *Page 599 
one might then possibly be passing upon that part of it; for in this connection it is a circumstance too striking to be overlooked, that so far as the evidence goes, it appears that not a word was said by either of them, then or at any other time, as to the possibility of their meeting a train at the crossing, by the tone they reached it. On the contrary, it is in direct proof upon the testimony of both the young lady and young Mr. Lynam, that their reason for that and for taking no more thought of this kind, and no more heed, care or caution in driving down to and upon the crossing without stopping, or looking out and listening for any passing train at that time, was because they well knew all the hours for trains to pass their house, and that it was then an hour after the time for that train to pass there. But their knowledge of that fact, if it was a fact, that no train had ever before passed there an hour later than the time they mentioned, which was about 6 o'clock in the evening, and their confident reliance upon it was a great, as well as a sad and unfortunate mistake on their part, and was not only a very unwise, but an unreasonable and unwarrantable assurance or assumption to act upon, under the particular circumstances then surrounding them, or, indeed, at any other time. It, therefore, distinctly appears in this case, on the proof presented on behalf of the plaintiffs, that they assumed upon that ground that there was no danger from any passing train at that time, and proceeded without hesitation or reflection or any doubt or misgiving, to drive down to the crossing and upon it, not only without stopping, but without looking out, or listening to ascertain if any train was approaching it from either direction, and which they could hardly have failed to discover, or to see or hear, as it must then have been so near them, had they done so but an instant before they drove upon the track at the crossing, and which would have prevented the collision and the injury which occurred to Mrs. Lynam and those with her in the carriage; and this we have no hesitation in saying, was done *Page 600 
without that proper and ordinary prudence, care and caution on the part of Mrs. Lynam who was driving and had the control and direction of the horse and carriage, which the law requires of the traveler in every such case, and which constitutes a clear case of contributory negligence on her part under the facts and circumstances proved, according to all the best considered cases which have been adjudged on that question, both in this country and in England; and they are numerous in both, even more so than the copious citations in this case have already shown. And it is equally well settled on the authority of the cases both in this country and in England, that when such contributory negligence clearly appears from the evidence on the part of the plaintiff in the action, the defendant is entitled to a nonsuit. Shear. Redf. on Negl. sec. 25, and the cases cited in the notes thereto.
Bird. May it please the Court. I decline to take a nonsuit, as 1 may conclude to carry the case and the question of law involved in it, to another Court for reconsideration and revision.
The Court then instructed the jury that in the opinion of the Court, for the reasons already stated, the plaintiffs were not entitled in law to recover in the action, and the defendant had a verdict.