STEVES *v.* OSWEGO AND SYRACUSE RAILROAD COMPANY.

Gross negligence in a person injured at a railroad crossing by a passing train will defeat his action for damages, notwithstanding the omission of those running the train to ring the bell or sound the steam whistle as required by law.

The effect of the statute is to superadd a duty upon the corporation, the disregard of which avails the injured party no otherwise than its omitting any common law duty in respect to care in running the train.

APPEAL from the Supreme Court. Action for damages from alleged negligence of the defendant in running a train of cars against the wagon in which the plaintiff was crossing the defendant's track. The trial was at the Onondaga Circuit, before Mr. Justice BACON. Upon the conclusion of the plaintiff's evidence, which is sufficiently stated in the following opinion, he was nonsuited by the court and took an exception. The exception was heard in the first instance at general term, and judgment being rendered for the defendant, the plaintiff appealed to this court.

*William Porter*, for the appellant.

*Thomas L. Davis*, for the respondent.

Steves *v.* The Oswego and Syracuse Railroad Company.

HARRIS, J. The testimony in this case presents an instance of surprising negligence and inattention on the part of the plaintiff. After riding along parallel to and in plain sight of the railroad track for the distance of about a mile, he undertook to cross the track, his horses being upon a walk. The day was cold and the wind blowing fresh from the northwest. He was traveling against the wind. His coat was turned up around his ears and a fur cap drawn down over them. With his hearing thus obstructed, and with abundant opportunity to see and avoid the approaching train, if he would but look, he advanced slowly upon the track. The only witness who saw the occurrence says: "He did not increase his speed ; he did not look back when crossing the track, or before ; he did not turn his head either way, before or after he got upon the track." Such negligence — such indifference to danger — is both unaccountable and inexcusable. The cars were passing at the usual time. With his sense of hearing unobstructed, the plaintiff might have heard the train long before it approached the crossing, and in abundant season to avoid even the possibility of danger. If, for his own comfort and to protect himself against the cold, he had chosen in any degree to deprive himself of the ability to hear, he should have used his eyes so much the more. Ordinary regard for his own safety would have prompted him, as he approached the crossing, to see, as he might well have done, whether the cars were not also approaching. It is obvious that a single look would have saved him from the disaster with which he met. One of his own witnesses, who stood forty rods west of the crossing, saw the cars when they were half a mile distant. He says he heard them plain enough, and that they had a bright light. He stood to see them come. That the plaintiff should have entirely omitted to look was the extreme of carelessness. Such carelessness is entirely inconsistent with a right to recover damages founded upon the negligence of the defendants. The plaintiff is himself the author of his own injury.

The only delinquency imputed to the defendants, and upon which alone the plaintiff seeks to sustain his action, is their omission to ring their bell or sound their whistle as required by law. (*Laws of* 1850, 232, § 39.) Regarding this as a question of fact merely, the testimony was insufficient to require the judge, at the trial, to submit it to the jury. The evidence would not have authorized the jury to find, as matter of fact, that the bell was not rung. The only witness who had a fair opportunity to hear, and thus was qualified to give reliable testimony on the question, was Catharine Mooney. She stood in the door of the house where she resided, about three rods from the crossing and fronting the railroad track. She did not see or hear the cars until they came opposite her door, and she could not say whether they rang the bell or not. She heard the whistle just as the engine struck the plaintiff's wagon. The witness already mentioned, who stood forty rods west of the crossing, and who heard the cars, and saw their light and stood watching their approach, says he heard no bell. It is not likely he would have heard it, however faithfully it might have been rung. The wind was blowing "*very hard*" from the northwest, the very direction in which he stood from the cars. Under these circumstances the fact that he did not hear the bell was entitled to very little if any weight upon the question whether the bell was rung or not. The only other witness who was located in the vicinity of the occurrence, was sitting in his house until the alarm was given that some one had been run over. Two other persons, who were passengers on the train, were examined. One of these testified that he did not hear the bell until they were at the bridge just north of where the collision had taken place, and that he had no recollection of having heard the whistle at all, although it was abundantly proved that there was a sharp whistle just before the plaintiff's wagon was struck. The other passenger merely says that he did not hear the bell. He heard the whistle near the crossing

This is all the testimony on the subject. It is too slight to sustain a verdict. The only witness who would have been likely to hear it, says she does not know whether the bell was rung or not. All who have been much accustomed to railroad traveling, will agree that very little account should be made of the statement of two passengers that they did not hear the bell. It is my own belief, founded on some experience and observation, that it is very rare, if indeed ever, that a passenger can hear the bell upon the engine when the train is under ordinary headway, and the doors and windows of the car are closed. Conceding to the plaintiff, therefore, all the effect he can reasonably claim for the testimony, it is not sufficient to warrant a jury in finding, as a fact, that the defendants omitted to ring their bell. It would have been the duty of the court to set aside such a verdict as unsupported by evidence. Upon this ground alone, the nonsuit was properly granted. (*Stuart* v. *Simpson*, 1 *Wend*., 376; *Hartfield* v. *Roper*, 21 *Wend*., 615; *Haring* v. *The New York and Erie Railroad Company*, 13 *Barb*., 9; *Labar* v. *Koplin*, 4 *Comst*., 547; *Brooks* v. *Buffalo and Niagara Falls Railroad Company*, 25 *Barb*., 600.)

But if it be assumed that, upon the question whether or not the bell was rung, the testimony was sufficient to sustain a verdict for the plaintiff, still I think the judge at the circuit was right in granting the motion for a nonsuit. The defendants, if they omitted to ring their bell, or sound a whistle as by law they were required to do, incurred the penalty prescribed for such neglect, and also rendered themselves liable for all damages which the plaintiff sustained " *by reason of such neglect*." (*Laws of* 1850, 232, § 39.) It is not enough to entitle the plaintiff to recover, that he establishes the fact that the defendants neither rang their bell nor sounded their whistle. Having established this fact, it must then appear that he has sustained damages by reason of this omission. This he did not do. On the contrary, as we have seen, he brought the injury upon himself by a most

unexampled act of carelessness. It did not require even ordinary care to avoid the injury. The slightest attention to his own safety was all that would have been required. The plaintiff had lived near the crossing where he was injured, and in sight of the railroad, for many years. He had often crossed at that place in going to and returning from Syracuse. The cars were running at their usual hour. They might have been distinctly heard and seen, only for the trouble of listening and looking. They were both seen and heard, at the distance of half a mile, by one who had no better opportunity to see and hear than the plaintiff himself. His own witness, having heard the cars and seen their light, stood looking at them for ten or twelve minutes, as he says, before they came to the crossing. Under these circumstances, it cannot be said that his injury was produced by any neglect on the part of the defendants.

The case of *Brooks* v. *The Buffalo and Niagara Falls Railroad Company* (25 *Barb.*, 600), in most of its principal features, bears a strong resemblance to that now in hand, and in principle it is not distinguishable. In that case, as in this, the plaintiff sued for an injury which occurred at a crossing. The plaintiff there, as here, resided in the vicinity of the place where he was injured. The cars were running on their usual time, as they were in this case. The road upon which the plaintiff was driving ran at right angles with the track of the railroad. For the distance of seven rods along the road by which the plaintiff came to the crossing, the cars might have been seen, in the direction from which they came, at the distance of sixty or eighty rods. The plaintiff drove upon the track and there stopped, looking in an opposite direction from that from which the cars approached, and remained until the collision took place; but how long it does not appear. It was assumed that the defendants did not ring their bell. This was the only negligence imputed to them. The action was brought in the Recorder's Court of Buffalo. The case was submitted to the jury, who

Steves *v.* The Oswego and Syracuse Railroad Company.

rendered a verdict in favor of the plaintiff. Upon appeal to the Supreme Court, the judgment was reversed upon the ground that there was no question in the case to be submitted to the jury. Mr. Justice GREENE, in a well considered opinion, pronounced the judgment of the Supreme Court. In alluding to the conduct of the plaintiff, he says: "It was an act of negligence, evincing a lamentable want of care, to drive upon the track heedless of the approaching train, which he might have seen and avoided by turning his eyes in the direction where at least ordinary caution, under the circumstances, would have prompted him to look for it." The decision of the Supreme Court was affirmed by this court, upon appeal, in December, 1855. It seems to me, that this decision should be regarded as conclusive upon the question now under consideration.

I am of opinion that the nonsuit was properly granted, first, because there was no sufficient evidence of any neglect of duty on the part of the defendants; and, secondly, if there was, the evidence shows that the plaintiff, by his own sheer recklessness, brought the injury upon himself. In the latter proposition a majority of the court concur. The judgment of the Supreme Court must therefore be affirmed.

DENIO, SELDEN and PRATT, Js., dissented, holding that the object of the statute requiring the ringing of the bell or sounding the whistle was to put persons, negligently approaching a crossing, upon their guard; and that the question whether the negligence of the plaintiff was such that, if the proper signals had been given, he would still have been injured, was one which should have been submitted to the jury.

Judgment affirmed.