John Deyo, Appellant, *v.* New York Central Railroad Company, Respondents.

To entitle a person, injured by an accident happening to a train of cars on which he is a passenger, to recover damages of the railroad company for such injury, he must establish affirmatively (1) that he was guilty of no negligence which contributed to the injury, and (2) that the company was guilty of such negligence.

The negligence of the defendant is the gist of the action; and the absence of negligence on the part of the plaintiff is equally important.

The court are justified in nonsuiting the plaintiff, when a verdict for the plaintiff would be set aside for want of evidence to sustain it.

*L. Tremain,* for the appellant.

*S. T. Fairchild,* for the respondents.

Davies, J. This action was brought to recover damages for injuries to the plaintiff, claimed to have been caused by the negligence of the defendant. On the trial, at the Albany Circuit, before Mr. Justice Wright, the plaintiff was nonsuited. Judgment having been entered for defendant, the same was affirmed at the General Term; and the plaintiff now appeals to this court.

It appeared upon the trial that the plaintiff was a passenger on the defendant's train of cars which left Syracuse for

the west on the night of the 19th of July, 1855, at 12.28. The train was moving over that part of the road where the accident happened at about the rate of thirty miles an hour. This section of the road was straight, well-constructed, and in good order, when the train was thrown from the track and the plaintiff was injured. The night was very dark, and it was raining at the time. The train was thrown from the track through the culpable act of some unknown person, who, maliciously or mischievously, drew the spikes which fastened the chairs and the rails. The spikes, on examination, were found to be drawn from the north side of two rails, the chairs shoved back and the spikes drawn from the chairs, and the rails moved north. Marks were visible on the ties of a claw bar having been used in removing these spikes. Two trains had passed over this section of the road, at the point where the injury happened, which was about four miles west of Syracuse, a short time before. This accident happened at 12.36. One train, going east, had passed over this part of the road at 10.40; another train, going east, passed this point at 11.15; another train, going west, left Syracuse that night at twenty minutes to 12, and passed that point at about 12 o'clock. The road was in good condition, when these trains passed over it, in safety, and without any obstruction. A short time before this accident, some obstruction had been placed in the road, within half a mile of the point where the plaintiff was injured. Search was fruitlessly made for the person who had placed it there. It also appeared that Wibert, the assistant trackmaster, a few days before the accident, had a difficulty with some workmen, who had been laying track on the road. They threatened to have satisfaction; and this occurred at a point about six miles west of that where the accident happened. It was known to these men that Wibert was in the habit of passing and repassing in the cars over his whole division, and usually rode on the engine. That night he remained in Syracuse, but went in there from the west in a hand-car, about 7 o'clock in the evening. The track was then all right. The inference is very strong that these men

supposed he would come out that night, and probably upon this train.

The only question upon this appeal is, whether there was any evidence of negligence on the part of the defendants or their servants, sufficient to warrant the learned justice who tried the action in submitting that question to the jury. It is a familiar principle, that carriers of passengers are not insurers of the safety of their passengers. Their duty is measured by the dangers which attend railroad carriage; and the utmost foresight as to possible dangers, and the utmost prudence in guarding against them, are required to exempt them from liability in case of injury to a passenger. (*Bowen* v. *N. Y. Central R. R. Co.*, 18 N. Y., 408.) Story on Bailments says: "Passenger carriers bind themselves to carry safely those whom they take into their coaches, as far as human care and foresight will go, that is, to the utmost care and diligence of very cautious persons." This doctrine received the approval of this court in the case of Bowen (*supra*); and it was added, that after the *onus* had been cast upon the carriers, they are bound to show that there has been no negligence whatever, and that the damage or injury has been occasioned by inevitable casualty, or by some cause which human care and foresight could not prevent. The familiar form of expressing the rule of duty of the carrier is, "as far as human care and foresight will go." Negligence is the violation of the obligation which enjoins care and caution in what we do. (*Tonawanda R. R. Co.* v. *Munger*, 5 Denio, 255; *S. C.*, affirmed, 4 Comst., 349; *Carroll* v. *N. Y. & N. H. R. R. Co.*, 1 Duer, 571.)

Another rule of law, equally well-settled, and of familiar application, is, that an action, founded on alleged negligence, cannot be sustained, if the wrongful act of the plaintiff coöperated with the misconduct of the defendants or their servants to produce the damage sustained. If the act be one of mere negligence on the part of the plaintiff, he cannot recover. (5 Denio, 264.) The same doctrine is repeated in this court in the same case (4 Comst., 360), and numerous cases cited to sustain it. If the plaintiff, by any act of his,

contributed to produce the injury, he cannot recover. It has very frequently received the approval of this court in numerous cases. (*Steves* v. *Oswego & Syracuse R. R. Co.*, 18 N. Y., 422; *Wilds* v. *Hudson R. R.*, 24 id., 430; *S. C.*, 29 id., 315.)

There was no evidence in this action of any negligence on the part of the defendants, their servants or agents. This portion of the track of the defendants was laid with the best and most improved rail. It was in perfect order. It had been passed over by their trackmaster a few hours before the accident. Within two hours before it occurred, three trains of cars had passed over it in safety; and it must then have been in complete order. The proximate cause of the accident was the removal of the spikes which fastened the chairs and rails to the ties and sleepers. It is apparent, that as soon as these fastenings were removed, a superincumbent pressure would displace the rails, and thus inevitably throw the cars off the track. No human care or foresight could guard against such a diabolical act, committed under the circumstances developed in this case. It is clear that these fastenings must have been removed after the last train going east had passed the point where the road was disturbed. This is manifest from the fact that that train passed safely over the road, and that it was the intention of the actors to have satisfaction of Wibert, the trackmaster; and it is apparent that this was their motive in removing the spikes. They doubtless knew of his going into Syracuse that evening, and naturally supposed he would return by the express train coming out from Syracuse, going west, that night. Their malice was, therefore, particularly directed against that train, as the one supposed to contain the object of their malice and hatred. It was of no particular moment, the rate of speed at which the train was passing at the time of striking that portion of the track which had been rendered incapable of sustaining the locomotive and cars. At any rate of speed, testified to on the trial, the result must have been the same — the displacement of the rails, and the overthrow of the engine and cars. The plaintiff, to maintain his action, had to make out negligence on the part of the defendants, their servants or agents.

This, it has been seen, there was an entire failure to do. The culpability of the defendant must be affirmatively proved, before the case can go to the jury. (Per DENIO, J., *Johnson* v. *Hudson River R. R. Co.*, 20 N. Y., 71.)

If, therefore, the jury, on this testimony, had found that the defendants had been guilty of negligence, it would have been the duty of the court to have set aside the verdict. It would have been, not only against the weight of evidence, but wholly unsupported by evidence. In such cases the duty of the court is clear and well-defined. (3 Graham & Waterman on New Trials, 1204, and cases there cited; *Brooks* v. *Buffalo & Niagara Falls R. R. Co.*, 25 Barb.; 600 — affirmed, Court of Appeals, December, 1855; *Steves* v. *Oswego R. R. Co., supra; Wilds* v. *Hudson River R. R. Co., supra; Haring* v. *N. Y. & Erie R. R. Co.*, 13 Barb., 9.) All these cases affirm also the doctrine, that, if the evidence is not sufficient to warrant a verdict, or if the court would set aside a verdict, if found, it is the duty of the court to nonsuit a plaintiff. This is distinctly declared in *Steves* v. *Oswego R. R. Co.* (*supra*, p. 425, and cases there cited). It is also very emphatically repeated by this court in the case of *Wilds* v. *Hudson River R. R. Co.* (*supra*), when that case was first in this court, as reported in 24 N. Y. This court then declared it to have been the duty of the judge, upon the facts proven in that case, to have nonsuited the plaintiff. The reasons for that judgment are very clearly stated. The judgment in that case was reversed, and a new trial ordered. Upon the new trial, the same state of facts substantially having been proven as appeared upon the former trial, the learned justice at the circuit nonsuited the plaintiff, in accordance with the former judgment of this court. This court affirmed the judgment of nonsuit (29 N. Y., 315), all the judges concurring, except the judge who tried the case at the circuit. The chief judge of this court said, that the uncontradicted evidence was such as not to present anything for the jury to deliberate upon, and, therefore, the nonsuit had been properly granted. In these cases the plaintiff was nonsuited on the ground that he could not maintain his action,

because it appeared that he had not been free from fault on his part. It is as essential that this should be established, as it is that the negligence of the defendants should be made to appear. The latter is the gist of the plaintiff's action; and the former is equally important. In the language of Judge GRIDLEY, in *Spencer* v. *Utica and Schenectady Railroad Company* (5 Barb., 337), "this is a stern and unbending rule, which has been settled by a long series of adjudged cases." (*Beers* v. *Housatonic R. R. Co.*, 19 Conn., 566; *Park* v. *O'Brien*, 23 id., 339; *Neal* v. *Gillett*, id., 437; *Daley* v. *Norwich & Worcester R. R.*, 26 id., 591.) And this rule is considered as the settled law of Connecticut. (*Fox* v. *Town of Glastenbury*, 29 Conn., 204.) In *Guhugan* v. *Boston and Lowell Railroad Company* (1 Allen, 187), the Supreme Court of Massachusetts held, that if the whole evidence upon which the plaintiff's case rests shows that he did not use due care, but was careless, the court may rightfully instruct the jury, as matter of law, that the action cannot be maintained. In *Toomey* v. *London and Brighton Railway Company* (91 Com. Law, 146), it was held that the judge was justified in nonsuiting the plaintiff, on the ground that there was no evidence of negligence on the part of the company. WILLIAMS, J., said, there was no evidence of negligence on the part of the company or their servants which ought to have been submitted to the jury. It is not enough to say that there was some evidence. A scintilla of evidence, or a mere surmise, that there may have been negligence on the part of the defendants, clearly would not justify the judge in leaving the case to the jury; there must be evidence upon which they might reasonably and properly conclude that there was negligence. *Cotton* v. *Wood* (98 Com. Law, 566), was an action under Lord CAMPBELL's act, brought by the plaintiff, as administrator of his deceased wife, for an injury which resulted in her death. On the part of the defendant it was submitted that there was no evidence to go to the jury of actionable negligence on the part of the defendant's servants. Of this opinion was the learned judge; but to save the necessity of going down again if the court should think

otherwise, he left it to the jury. On a motion for a nonsuit, Erle, Ch. J., said, he was of the opinion that the rule must be made absolute to enter a nonsuit; that the plaintiff was not entitled to succeed unless there be affirmative proof of negligence on the part of the defendant or his servants. Williams, J., stated his concurrence, and added, that there is another rule of evidence which is of the first importance, and is fully established in all the courts, namely, that where the evidence is equally consistent with either view — with the existence or non-existence of negligence — it is not competent to the judge to leave the matter to the jury. The party who affirms negligence, has altogether failed to establish it. That is a rule which ought never to be lost sight of. The other judges concurring, the rule for a nonsuit was made absolute.

The doctrine of these cases fully supports the ruling at the circuit, and the judgment entered thereon. The judgment appealed from should, therefore, be affirmed.

Campbell, J. A train of the defendants was running at a high rate of speed on a descending grade, but over a section of the road straight for several miles, the road well-constructed and in good order, with engine and cars also in good condition, when, at a point a few miles west of Syracuse, and at about midnight, the train ran off the track, and the car in which the plaintiff was riding as a passenger was turned over and he was seriously injured. Two other trains had passed over the same point within two hours previous to the accident — one of them about thirty minutes before — when the track and rails were all in order. But, in the short intervening time, some evil and malicious person had drawn out spikes and pushed some of the rails from their bed, and by this means the engine and part of the cars were turned off the track. There were three passenger cars and a baggage car in the train. They stopped almost immediately, according to the testimony of the plaintiff, who is himself a railroad engineer. He was riding in the middle car, which was turned over on its side, but the car next in rear was not drawn

entirely off the track. The witnesses were in conflict as to the speed of the train at the time of the accident—the engineer who was in charge swearing that he was positive he was not going much, if any, over thirty miles an hour; while, on the part of the plaintiff, evidence was given tending to show that the rate was as high as fifty miles per hour. The facts that the cars were stopped so soon—almost immediately; that the couplings were not broken; that, with a small train of only four cars, the last car was not thrown entirely from the track, would tend to show that there was not, at the time, a high rate of speed. But, as the plaintiff was nonsuited, we must, perhaps, take his evidence, and concede that the cars were running at a high rate, say fifty miles an hour. The train, it was said, was a few minutes behind time; the road was in good order; the grade a little descending; and the line in front straight for several miles. A rate of fifty miles an hour is not common, but by no means unusual or extraordinary, on well-constructed roads. There was a possibility of accident, as there is a possibility attending the movement of every train, whether the rate be twenty or fifty miles an hour. But there was no probability that such accident, or any accident, would occur. As this train was turned from the track by the ends of rails moved from their bed, and ran down a bank, no court or jury would be warranted in saying that the accident would not have occurred had the train been running only at the rate of twenty instead of fifty miles an hour. I do not see, under the circumstances, how negligence could be imputed to the defendant in consequence of the speed of the train. Whether or not the accident would have otherwise occurred, would be a matter of vague speculation.

But was the defendant warned? Would a very careful and prudent person have been led to fear, and take precautions other than the defendant did, to guard against anticipated danger? Wibert, who was assistant trackmaster, and who had charge of a division of the road, of about twenty-nine miles in length, was examined in behalf of the plaintiff. On his division the accident took place. He testified that Miller, the trackmaster on the whole line from Syracuse to Rochester,

had told him to be on his guard; but he could not tell whether it was before or after the accident, but he thought it was before. Two or three days before the accident, Wibert also had a controversy with his laborers on the road, and he ordered them out of doors, and one of them he took by the collar and shoved out, and they said they would have satisfaction. But against what Miller advised Wibert to be on his guard, and what kind of satisfaction the laborers intended to take, does not appear. Whether he was to be on his guard to prevent injury to the road, or to protect himself against personal violence, we are not informed. The plaintiff, on his own behalf, swore that Harrison, the engineer on the train the night of the accident, told him afterwards that threats had been thrown out against the road six weeks previous to such accident. This was positively denied by Harrison. It also appeared that, some six weeks before the accident, a tie or ties had been put on the track, and Wibert also testified that Chittenden, the assistant superintendent, or Miller, the track-master, which, he did not know, had told him that there had been, shortly before the accident, some obstructions placed upon the road not far from where the Oswego road came in, and not far from where the accident occurred. The information probably came from Miller, who had previously been examined as a witness, and who testified that he had heard that ties had been thrown on the track. Chittenden, the superintendent, testified that when danger was suspected from evil-disposed persons, watches were placed; that he was in daily consultation with the principal trackmaster; that he had heard nothing to put him on his guard, and had no reason to suspect anybody; that afterwards, and in consequence of the accident, he appointed special policemen to watch the road in that vicinity.

It must be conceded, I think, that there was a question of fact, growing out of conflicting testimony, as to the knowledge possessed by some of the subordinate officers of threats made against the road. But the evidence, to say the least of it, on this point, was very unsatisfactory; and it is very evident that no such information had come to the person

whose duty it was to take the necessary precautions and to appoint the special police watch, namely, Mr. Chittenden, the assistant superintendent, having in immediate charge this section of the defendant's road. But, conceding that, so far as the question affects the case of negligence, the superintendent was bound to know all his subordinates knew, or, in other words, that their neglect was his neglect, and his neglect that of the defendant, what was required to be done, under the circumstances? Wibert, to whom the threats were made by the laborers, had under his immediate charge twenty-nine miles of the road. Under the circumstances of this case, suppose that a watch had been placed at the point where this accident occurred, and no accident had occurred there, but one had occurred of the same character at or near Wibert's place of residence, and near where the controversy arose between him and the laborers, it might then have well been argued that there was neglect, if the plaintiff is right in his theory of the liability of the defendant. But it may be seen, that, if not physically impossible, it was practically so, to guard against such an accident as occurred in this case. The threats were vague; no place of attack was mentioned. It was not indicated what kind of injury would be done; whether bridges would be destroyed, burned or blown up; whether obstructions would be placed on the rails, or rails removed. In this case, the place selected was an embankment, where bushes were growing thick alongside the road — a place of ready concealment. The night was dark, and rain was falling. If obstructions were to be placed on the road, it might be but the work of a moment; on the very instant, almost, that the train reached the spot. If rails were to be removed, the spikes could be drawn from time to time, and preparation made so that in a few minutes, perhaps seconds, the rails could be removed as the train approached. It cannot be said that it would be impossible to guard in such cases against the motives and crimes of wicked men; but, unless the very point where the injury was contemplated was known in advance, it would require for entire protection a very large number of recruits from the recent grand armies of the Union.

On the whole case, I do not think there is good ground, or any ground, for saying that this plaintiff suffered injury by reason of the negligence of the defendant. I think the non-suit was properly granted, and the judgment should be affirmed.

All the judges concurring,

Judgment affirmed.