## JOHN BEISIEGEL, Appellant, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

It is erroneous to nonsuit a plaintiff, who was injured by a locomotive crossing a street, without signals, in violation of law, where his omission to discover its approach was due to the neglect to give the usual warning.

A foot passenger on the public highway, who is not aware of the vicinity of a moving train, is at liberty to assume that none is approaching, when no flag is displayed and no whistle or bell is sounded.

As between him and the railroad company, he is not bound to be on the alert for danger, when he has the assurance of the company that the crossing is safe.

APPEAL from judgment of General Term, affirming order of nonsuit at circuit.

The plaintiff sued the railroad company for damages for negligently running a steam engine against him while crossing the track on St. Joseph street, in the city of Rochester.

The evidence shows that the plaintiff was passing on the east side of South St. Joseph street, from north to south, when he saw a long train coming up from the west, and he waited until it had passed. He stood on the second track on the sidewalk. There were five tracks, and the two north tracks were filled with empty cars, ten or twelve in number on each track on the east side, and near to the sidewalk. When the long train had passed, making a good deal of noise, the plaintiff started on, looking to the east as far as he could see, and the track was clear as far as he could see. He then turned his head to the west as he started to go across the tracks, and, while crossing, an engine coming from the east struck him on the shoulder and caused the injury. He did not hear the bell ring except on the long train, and no flagman was there at the time.

. The plaintiff had crossed the track often before this. He was standing on the second track when the long train passed, and remained there a minute and a half or two minutes. The empty cars which were standing on the first and second tracks were so near him that he could touch them with his

hand.   The first step he took he looked east, but did not look eastward again after he got over the south rail of the second track.   He was looking west all the while after that, until he was struck by an engine backing down from the east.   He could see down the third track about eight or ten feet when he looked east, which was before he stepped over the south rail of the second track.   It was conceded that the tracks are straight at this point.

The empty cars that stood near the crossing were box freight cars, eight feet high.

The engine that struck him was running very fast toward the Rochester depot, and the evidence tended to prove that the bell on the engine was not rung until after the accident.

The engine that struck the plaintiff was on the third track, and the engine fender projected over the track eighteen inches.   The freight cars projected over the same distance.   It also appeared that St. Joseph street is in a populous and thickly-settled part of the city.   By the map it appears that the five tracks at this point cross St. Joseph street at an obtuse angle, so that a person crossing from the north to the south side of St. Joseph street could not see an engine approaching on the third track from the east, standing where the plaintiff did, on the second track, with freight cars on the first and second tracks to intercept his view.

The court nonsuited the plaintiff, upon the ground that it was his duty to have looked and ascertained, before attempting to cross the railroad, that he could safely pass the same, and that it was negligence in him not to do so.

*Geo. F. Danforth,* for the appellant.

*Theron R. Strong,* for the respondent.

MORGAN, J.   Upon the undisputed facts of the case, the plaintiff could have avoided the accident, by exercising a little more precaution before he stepped on to the third track.   If the freight cars had not intercepted his vision, he must have seen the engine approaching from the east in time to have avoided the collision.

It is said that common prudence required him to put himself in a position to see whether there was a train coming from the east on the third track before he attempted to cross it. The evidence, however, tended to show that the railroad company was guilty of great negligence in backing down at so rapid a rate of speed across St. Joseph street, without any flagman to warn foot passengers of their danger, or without sounding an alarm from the engine. With their cars standing upon the tracks so near the crossing, the company was guilty of inexcusable negligence in omitting to take the usual and necessary precautions to prevent accidents.

As an original proposition, it seems to me that the omission of a railroad company to sound an alarm when approaching a crossing, especially when the view is obstructed by intermediate objects, is some excuse for the inattention of a way traveler to the danger of an approaching train. The way traveler depends upon his ears as well as his eyes; and when his vision is obstructed, and he is within a few feet of the track and hears no alarm, it ought not to be thought very hazardous to step across the track. If he hears no signal, he does not expect a train to cross his path when he has but a few feet to go to cross over; and if he, for greater precaution, stops and looks both ways before he makes the last step to reach the track, he exercises more precaution than a majority of our citizens do, in similar circumstances.

The doctrine which requires a traveler, in all cases, to stop and look both ways when approaching a railroad track, presupposes that railroad companies are guilty of violating their duties to such an extent as to make it a matter of course to expect a train to run over the streets of a city under full headway, at any time, without signals or safeguards. When the vision is obstructed, as in the case at bar, the way traveler generally listens to hear the alarm, and if none is given, it is not, or at least ought not, to be presumptuous in him to suppose that he can walk over the track with safety. He has a right to believe that the engineer will not run his engine with such dangerous speed without ringing the bell or sounding the whistle.

It is not sufficient to defeat this action to say that, in another case, the plaintiff was nonsuited because he failed to look both ways before attempting to cross the track of a railroad. The want of caution which constitutes negligence must, in any given case, depend upon the circumstances under which the plaintiff is placed at the time.

If the tracks had been clear so that the plaintiff could have seen the approaching engine, then, doubtless, it would be negligence in him not to have seen it. So much must be conceded, as settled by the adjudications in this State.

It is said the plaintiff ought to have known, from the number of tracks, that such a thing was very likely to happen as did happen in this instance, and as it happens, probably, very often. But this supposes that the railroad company very often backs down an engine upon their tracks across St. Joseph street, in a crowded part of the city, at a rapid rate of speed, without a flagman at the crossing, and without giving any signal whatever of its approach. For if the usual signals are given, which the most ordinary prudence requires in such a case, it is not to be expected that such a thing will very often happen as did happen in this case. It involves a gross violation of duty on the part of the railroad company, and for that reason such a thing ought not to be expected by the way traveler. The very object of requiring the engineer to sound an alarm before reaching the crossing is to put the way traveler on his guard; and when the engineer neglects the necessary signals, he deprives the traveler of one of the means upon which he has a right to rely for protection against the danger of a collision.

The evidence tended to show that the plaintiff was within a few feet of the third track, and heard nothing to give him warning of an approaching engine. He left his position and stepped forward to cross it. He could not see the approaching engine until he had got to the very point of danger, and then, on account of the rapid motion of the engine, he was unable either to cross over or to recede and avoid it.

The court below maintains the proposition that the plaintiff, although he had waited on the second track until one train

had passed, and had heard no signal of another, yet that he should have stopped again and looked down the third track before attempting to cross it. And this is put upon the ground that it might be expected that an engine at full speed would be rushing along at that very time without giving any warning of its approach.

I cannot subscribe to such a proposition. It was, I think, a question for the jury to decide, whether, under the particular circumstances of the case, the plaintiff was wanting in ordinary prudence in attempting to cross the third track when he did, without taking other precautions to discover that it was clear.

Doubtless if the engineer gives the usual signals, and the way traveler does not hear them, it would be his misfortune if he came in collision with the engine. So if the way traveler can see the train with his eyes in time to avoid it, it is his folly if he ventures to proceed and comes in collision with it. But when he cannot have the use of his eyes to discover the danger until he reaches the track upon which the train is approaching, and upon stopping a few feet short to listen he hears no signal, can it be said, as an abstract proposition, that the plaintiff is guilty of negligence because he trusts his ears and comes to the conclusion that it is safe to take the few steps necessary to pass over it? If he has listened while standing within a convenient distance of the track and has heard no signal of an approaching train; if he has but a few steps to go to cross it; and if, acting upon the belief that it was safe (as nine men out of ten would do in a similar situation), he started on and was met by an engine running along almost noiselessly and at great speed; can it be said, with propriety, that he should have expected such a thing to occur as did occur in this case?

It is not necessary to decide that the plaintiff was not guilty of negligence. All I claim is, that, considering the peculiar position the plaintiff was placed in, as may be gathered from his own statement; his proximity to the track; the few moments it would take him to clear it; his obstructed vision, and the noise and confusion at the time; that no signals were sounded from the approaching engine to put him

on his guard, and the unusual speed with which the engine approached him; I say, considering all these circumstances, it should have been left to the jury, as a question of fact, to determine whether or not the plaintiff was guilty of negligence in attempting to cross the track without taking further and additional precautions against the danger of a collision.

If, however, the evidence should disclose that the plaintiff was heedless or careless, and neglected to avail himself of the usual precautions which men of common prudence would use in like circumstances, he cannot recover, under the well-settled rule that his own neglect contributed to produce the injury.

The degree of care which a way traveler should observe when about to cross a railroad track, has been discussed in several adjudicated cases.

In *Pennsylvania Railroad* v. *Ogier* (35 Penn., 60), it was held, that negligence was a relative term when applied to a traveler in such a case, and consisted in the absence of that ordinary care which a party ought to observe under the particular circumstances in which he is placed; and that a different degree of care is required, when there is reason to apprehend danger, from that which is necessary when none is to be expected. It was further held that a defendant cannot impute a want of vigilance to one injured by his act or negligence, *if that very want of vigilance was the consequence of an omission of duty on the part of the defendant.* In *Johnson* v. *The Hudson River Railroad Co.* (20 N. Y., 66), the same views were expressed, and it was held that the deceased was bound to exercise *ordinary* prudence, and no more; and it was for the jury to determine whether it appeared, from the evidence, that there had been, on the part of the deceased, a want of that care and foresight that men of ordinary prudence are accustomed to employ, placed in like circumstances (p. 68). And in *Warren* v. *Fitchburg Railroad Co.* (8 Allen, 227), it was held, that crossing a railroad track without looking to see if a train is coming, is not conclusive proof of want of care, although, with nothing to

explain or qualify the act, it would be regarded as negligence. The plaintiff, in that case, followed the direction of the station agent to cross over. The path by which he went to the train was somewhat oblique, in that the engine which struck him came in a direction partially behind him. The court say: "Whether, in this condition of things, his anxiety seasonably to reach the train, which would stop but a moment, the plaintiff, at a station with which he was not familiar, would have been likely to be thrown off his guard by the direction to cross over, given without any caution or qualification; whether he might naturally, and without subjecting himself to the imputation of want of care, have considered himself under the charge of the defendant's agent, with an assurance that it was safe and proper to go directly to the cars, were questions for the jury, and not for the court." The case shows that, when he reached the outside of the platform, he could see an approaching train at a distance of thirty or forty rods, but that he stepped off without looking that way, and did not hear the whistle until it was too late to escape the collision. Unless I am not entirely mistaken, there were more circumstances of excuse for the plaintiff, in the case at bar, than in the case of Warren.

The duty of a railroad company to exercise more caution, and a higher degree of care, when running their cars through a village or city, than in the open country, as was held in *Fero* v. *The Buffalo and State Line Railroad Company* (22 N. Y., 209), concedes that the company would be liable in not exercising it, when, by so doing, ordinary prudence on the part of a way traveler would save him from a collision. The good sense of the rule may be thus expressed: *Ordinary* care requires the way traveler to look for a train when approaching a railroad track. If he cannot see, by reason of obstructions, it requires him to stop just short of the track and listen. If he does more than this, it is extraordinary caution, and what is not required on the part of the plaintiff to entitle him to recover against a railroad company which has culpably omitted to sound an alarm before reaching the

crossing, if the jury believe that the accident would not have occurred provided the *usual* signals had been given.

I distinguish the case at bar from those in this State where it has been held, that the plaintiff could not recover in consequence of his own want of caution in attempting to cross a railroad track. In *Dascomb* v. *The State Line and Buffalo Railroad Co.* (27 Barb., 221), the plaintiff drove along upon the track without taking the slightest precaution to ascertain whether or not a locomotive was approaching. In *Mackay* v. *New York Central Railroad Company* (id., 528), the deceased, after being notified of the approaching train, whipped up his horses and undertook to cross the track, when he was struck by the locomotive and killed. In *Sheffield* v. *Rochester and Syracuse Railroad Company* (21 Barb., 339), the plaintiff was in plain sight of the track, with nothing to obstruct his view. So in *Steeves* v. *The Oswego and Syracuse Railroad Company* (18 N. Y., 422). In *Wilds* v. *The Hudson River Railroad Company* (24 id., 435), it is assumed, in the opinion of the court, that the company complied with the requisition of the statute by ringing the bell, so that it was heard at a distance sufficient, and in time sufficient, to give abundant notice to all persons to keep off the track. A flagman was also at the station, giving signals of the approaching train. This was, perhaps, sufficient to dispose of the case, without reference to the misconduct or negligence of the deceased; but the opinion proceeds to state that the deceased himself, after notice of the danger, whipped up his horses and attempted to cross the track. Under this state of facts, the court very properly decided that the defendants were not liable. The action was tried again, and judgment of nonsuit ordered against the plaintiff. On appeal to this court, the judgment of nonsuit was affirmed. (29 N. Y., 315.) The opinion was delivered by DENIO, Ch. J., in which he indulges in some observations which, I think, are liable to be misunderstood, when applied to the case at bar. "If," he says, "the case is such as to require the person wishing to cross to come near the track to make his observation, that circumstance, so far from excusing him from

the duty of looking at all, would only render that duty more imperative, if he would avoid the imputation of negligence." I agree that it is the duty of a person, who is about to cross a railroad track, to make an observation before crossing; but in our cities the vision is constantly obstructed by intervening obstacles, when it is often very difficult to see up or down the railroad track, beyond the space of one or two buildings. However much we may speculate upon what should be considered prudence in such a case, our citizens walk over the track daily, depending upon their hearing, more than they depend upon their eyesight, to determine upon the propriety of crossing over it. If locomotives are run as they should be (and as I think they generally are in our cities), with moderate speed, it would be rarely, if ever, that a foot passenger would be caught by an engine while walking over the track, in such a case.

But if an engine is running in such a case at full speed, without making any signals of danger, then, doubtless, there is no safety except for the foot traveler to stop at every point to obtain an observation until it is obtained, and then to run for his life until he is on the opposite side. If he can see both ways but twenty rods, and has but four rods to go to get over the track, it might be prudent, perhaps, for him to wait until he could see farther; for if trains are allowed to run at full speed in our cities, an engine at twenty rods distance might overtake him before he had time to clear the last rail on the opposite side. Indeed, it may be said with truth that in our cities it is safer in many cases to listen for signals than to attempt to see an approaching train by looking up and down the track.

It is not unusual for empty cars and freight cars to stand upon the tracks near the crossings in our cities. Some have engines attached to them and are waiting some signal to start. Some have no engines attached. In the mean time passenger trains are moving in and out, and a person who wishes to cross the track is necessarily in some doubt as to the exact condition of things. His observation of the track is necessarily very limited, and the view he obtains quite unsatisfac-

tory.   There is often a curve in the track at a short distance from the crossing, so that he cannot see an approaching train, without going quite a distance out of his way. In this condition of things, ought we to establish the rule, that a foot traveler is guilty of want of ordinary care and caution, by attempting to cross without first obtaining an observation of the track, at a distance sufficient to insure his safety against a locomotive advancing toward him at the rate of thirty or forty miles an hour?

In my opinion, we ought to hold the railroad companies responsible in such a case, if they run at too great a rate of speed to allow a man to clear the track who has approached it without being warned of the danger by the usual signals.   When a man on foot reaches a point near the crossing and listens and hears no signal or warning, I think he is not guilty of negligence for attempting to cross over the track in a case where he cannot see up and down the track by reason of obstructions.   But I would not make the railroad companies liable for a collision in such a case where they run their locomotives with moderate speed, and make the usual signals before reaching the crossings.

We are to look at the case at bar as it appeared from the plaintiff's statement, and we must assume that the defendants ran their engine at a dangerous rate of speed, without giving any signals of danger; that the plaintiff listened while standing upon the second track and heard no alarm; that he could not see the engine until he was about to step upon the third track, when it struck him before he could get out of the way.   In this view of the facts, I think the court below erred in holding, as a matter of law, that the plaintiff was guilty of negligence.   The judgment should be reversed and a new trial granted, costs to abide the event.

PORTER, J.   The nonsuit seems to have been granted on the theory that a citizen, who crosses a railway track at its intersection with a public highway, is an absolute insurer of his own safety against the criminal negligence of a wrong-doer. It was sustained at the General Term on the equally untenable

theory that the plaintiff, who looked in each direction before crossing and saw no engine approaching, was guilty of culpable negligence in not continuing to look both ways simultaneously. In either aspect, the decision was plainly erroneous.

The plaintiff owed no duty to the defendant beyond the exercise of ordinary care. The proof is clear, not only that he was free from negligence, but that he exercised more circumspection and care than most men would, under similar circumstances. He was on the east side of St. Joseph street, proceeding in a southerly direction, and, on arriving at the crossing, he observed the approach of a train of cars from the west on the fifth or southern track. He stopped at a safe distance and waited until the entire train had passed. He stood at the point where the second track crossed the sidewalk. This and the first or northern track, through some unexplained neglect of the company, were used as a place of deposit for empty freight cars, eight feet in height, extending up to within three feet of the sidewalk, and thus obstructing, in a considerable degree, the eastern view of the tracks used by the trains. No other cars were in view, and there was no signal from any quarter of approaching danger. The flagman, whose duty it was to be at his post and display his flag when an engine was drawing near, or when from any cause the crossing was unsafe, did not appear to give the customary warning. It turned out, however, that, at the moment the plaintiff resumed his way, an engine unincumbered with cars was running rapidly backward from the east on the track next to that on which he had been standing. Its approach was so sudden and noiseless that, although four of the witnesses stood on the south side of the crossing, looking toward the north, and with nothing to obstruct their view, neither of them saw it until an instant before the accident. The plaintiff knew nothing of this, and his first step brought him within some four feet of the point where he was struck by the projecting fender of the engine, which, though veiled from view, must then have been within forty feet of him. At the first step he looked east, at the second west, and he was prostrated at the third. The whole affair was so instantaneous that he

did not get to the track, but was knocked down before he reached it.   After he started, less than two seconds intervened before his leg was crushed. · All the witnesses swear that the engine was moving at a rapid rate of speed.   All agree that the bell was not rung until after the accident.

Upon this state of facts, it is obvious that the gross negligence of the defendant's agents was the sole cause of the injury.   The omission of the customary signals was an assurance by the company to the plaintiff that no engine was approaching within a quarter of a mile on either side of the crossing.   On this he was entitled to rely, and to the defendant he owed no duty of further inquiry.   He was not bound to be on the look-out for danger when assured by the company that the crossing was safe.   The views expressed in the case of *Ernst* v. *The Hudson River Railroad Company*, decided at the present term, are equally controlling in this case.

The judgment should be reversed and a new trial ordered.

All the judges concurred, except DAVIES, Ch. J., who expressed no opinion.

Judgment accordingly.