Monell, J. (dissenting.)
The appeal from the order, denying the motion upon the judge’s minutes, for a new trial, has brought before us for review all the evidence given at the trial, and we are now called upon to determine whether or not such evidence is sufficient to sustain the. verdict.
The rule seems to be now established, that if there is any conflict of evidence, in respect to the negligence charged on the one side or the other, it must go to the jury; and as a general thing their finding is conclusive. The latest reported case on this subject is Sheridan v. Brooklyn City Railroad Company, (36 N. Y. Rep. 39;) but for a more full enunciation of the rule see Ernst v. Hudson River Railroad Co., (35 id. 9, 38, 40,) where it is especially applied to the proof of negligence on the part of the plaintiff.
The plaintiff must have been free from fault. Any contributing negligence on his part, will defeat a recovery. The evidence must be sufficient to satisfy the mind. If it is conflicting, it must go to the jury. If it is undisputed, its sufficiency is a question for the - court. (Clark v. Eighth Avenue Railroad Co., 36 N. Y. Rep. 135.)
The delicacy of disturbing the verdict of a jury on a question of fact found under proper instructions as to the law, as well as the pecuniary importance of this case to the plaintiff, has induced me to bestow much care and thought in its examination.
The facts proved on the trial were these: The deceased was a man of about forty-three' years of age, sound in limb, and in full possession of all his faculties. He had resided *298 at Mount Vernon for a period of upwards of fourteen years. His house was on the westerly side of the railroad, and on the southerly side of a road or street crossing the railroad, and within one hundred yards of the depot building. He was engaged in business in the city of New York, where he was accustomed to go daily, returning usually upon the train which was due at the Mount Vernon station at twenty-seven minutes after three in the afternoon. These facts establish beyond any reasonable doubt, that the deceased must have been, and was entirely familiar with every fact, circumstance and thing which related to the operations of the railroad at -that point. He must undoubtedly have known the precise moment of the arrival and departure of all the trains; the precise position and purpose of the tracks, platforms and depot, and of the passing of express trains without stopping. From his constant habit of travel, he must have been apprized of the frequent variations of a few moments of time in the arrival, departure or passing of trains; and he also knew that there was but one minute of intervening time between the departure of the up, and the passing of the down train. From his long continued practice and observation, he was able to avoid all exposure to such dangers, as a stranger might have fallen into. He was in the habit of getting off the cars at a time when he knew there was danger from the express train, due only a minute afterwards. He knew that the platform on the easterly side of the track, had been put there by the railroad company for the safe and convenient landing of passengers from the up train; and the deceased must be. presumed to have known that if he left the cars from the east side, and landed upon the platform, he would be beyond all danger from the-down train. His long experience in railroad traveling, must, and very probably had informed him, of the difference in the speed of express, and way or accommodation trains, and that the latter were the most liable, from their frequent stoppages, to be behind time. From the same experience, he knew- that the train he usu *299 ally took, stopped abreast of the platform to discharge its passengers; and that if it stopped for any purpose before it reached the platform, as. some of the witnesses testified it did, he was not obliged to alight until it came alongside the platform.
With all this information and knowledge derived from an observation and experience of fourteen years, what did the deceased do ? The time was early in the afternoon of a Hovember day.
According to the evidence most favorable to the plaintiff; the deceased had occupied a seat in the cars with the witness Lavinsky. As the train was approaching the station, they shook hands, and Lavinsky jumped off from the rear part of the car. The last he saw of the deceased, he was just stepping down from the step on the west side of the car. The plaintiff testified that she saw the deceased standing in (or as she expressed it “ under ”) the door upon the platform. All the evidence concurred that he got off on the west, or opposite side from where the platform was placed for the convenient reception of passengers by the up train. The evidence also established that the deceased left his seat, and reached the rear platform of the car before the train was stopped. Indeed, the clear weight of the evidence was that the train had not stopped when the deceased stepped off. Lavinsky testified that the train “stopped a very little; she stopped and went directly on.” But the witness Heller, who was standing very near the train, and had a better opportunity for seeing, said, “ the train was just coming to a stop when the deceased stepped off. It was in the act of stopping.” And he was fully corroborated by several of the defendants’ witnesses who swore positively that the train was “ slowed” as it approached the station, but did not stop until it reached the platform, or until after the express train had passed down. It was further established, that the deceased left the car before it reached the platform. Lavinsky, who got off on the east side, at the same instant the deceased was getting off from the west *300 side, said he had to jump down, and there was no platform there.
Under this evidence, which I may say is without any real contradiction, I am totally at a loss to account for the verdict, which, under the charge of the court, that if the jury believed that the cars had not stopped when the deceased . stepped off, the plaintiff could not recover, should have have been for the defendants.
A person seeking redress for personal injuries, is held to the exercise of ordinary care and prudence only. "While the law affixes a high degree of responsibility upon carriers of persons, and requires the utmost skill and caution in their transportation, yet the law is satisfied with a far less degree of prudence on the part of the person injured. The ability to exercise such ordinary care and prudence, must always depend, in a great measure, upon the knowledge, information, intelligence and experience of the person exercising it. Hence, what is called negligence is always relative; that is, it must always, more or less, relate to the particular and peculiar circumstances of the case. It would be highly imprudent for a cripple to cross a crowded thoroughfare; or for a blind person to walk unattended in the public streets. Yet one, with sound limbs and perfect sight, could do so without danger. A stranger arriving for the first time at Mount Vernon station, might be excused, if in his ignorance he stepped from the car on the side where danger threatened; but an old inhabitant, with the knowledge and experience of Gonzales, would be without excuse. This rule, that negligence is relative, is recognized in Beisiegel v. N. Y. Cent. R. R. Co. (34 N. Y. Rep. 622,) and is founded upon sound principles.
The embarrassment of finding that the getting off the car on the west side was not a heedless and imprudent act of the deceased, was probably removed from the jury, by the admission of some evidence of, in my judgment, very doubtful propriety. The plaintiff was allowed to prove, under objection, that the deceased and others, were in the *301 habit of getting off on the west side, and that the employees of the railroad were in the habit of assisting passengers off and delivering passengers on that side, and that no notice was put up, warning passengers of the danger of alighting on the west side, or inviting them to alight on the east or platform side. If the daily practice of the deceased and of others was to expose themselves to peril, in the face of their knowledge and experience, by disregarding the means of safety provided for them by- the defendants; and if it was their daily habit to venture upon reaching the opposite side of the railroad, with only the short period of one minute within which to escape an approaching danger, such practice and habit with persons familiar with the situation, was, in my judgment, highly imprudent and heedless. Nor did the apparent security-of the act render it any the less crina-, inally negligent. Such persons may have passed out on the west side a thousand times in safety, without its furnishing any excuse for experimenting again with a few seconds of time between themselves and almost certain destruction.
The deceased had no- right to get off on the west side. He knew it was the wrong side. He knew the platform on the other side was made for the convenience and safety of passengers. If he was thoughtless or inattentive, he was negligent. He had no right to be thoughtless or inattentive, for he was bound to the exercise of every ordinary care, and as far as he had the means, to avoid all danger. He had a right to take a risk upon himself, but he must also take the consequences of it.
If a passenger voluntarily, without any known or discern-able necessity for it, and without any direction from the carrier or its servants, puts himself in a place of danger, his negligence is prima facie established, and the burden rests upon him to rebut the presumption. (Clark v. Eighth Avenue R. R. Co., ubi sup.) In that case the charge of negligence was, that at the time of receiving the injury the passenger was standing on the steps of the front platform of a city car, it appearing that he would have escaped the injury had he *302 been either inside of the car or upon the platform; and the court say: “ In the absence of any explanation, I should have no hesitation in saying that this position of the plaintiff at the time of the injury, proved that he was negligent, and that it would have been the duty of the court to non-suit. (Curran v. Warren Chem. and Manufacturing Co., 34 How. Pr. 250.) The presumption in that case was rebutted by proof that there was no room inside the car or upon the platform, and that the conductor assented to his standing on the step.
From the array of facts which I have presented, which, and more, are to be found in the case, can any one doubt that • the negligence of Gonzales was a contributing cause • of his death. Had he left the cars on the easterly side he .would have been safe; but he saw fit, heedlessly, I think, to disregard the means of safely provided, and violating his duty to exercise care, exposed himself voluntarily to the danger which destroyed his life.
Being unable to find any evidence to relieve the plaintiff from the consequences of the imprudent act of her husband, I am constrained to conclude that the verdict of the jury is unsupported by the evidence, and applying the well settled principle that the injured or deceased person must have been wholly free from all contributing negligence, the ver- , diet must be set aside and a new trial granted.
But there is another side to this case to which I regard it my duty to address some attention.
In the charge of the learned justice to the jury, he directed them,' at much length, to the law relative to the concurring negligence of the deceased. He seemed to assume that the proof of the defendant’s negligence was sufficient; and without directing the jury to any evidence, (except the omission to sound a whistle or ring a bell on the express train,) proving or tending to prove negligence on their part. He merely instructed them that if they found that the deceased was not guilty of negligence, “ and that the defendants were,” they must find for the plaintiff.
*303 The deceased was crushed under the wheels of the train from -which he had alighted. He was not run over by the express train. That he was even struck by the express train, as testified to by Lavinsky and Heller, is not probable. But it-is possible, that getting off the up train on the west side at the moment the express train was passing down, he was thrust under the wheels of the former, by the concussion or violent agitation of the air. Yet, notwithstanding the testimony of these two witnesses, it is left, I think, entirely to conjecture how, or through, or by what agency he got under the wheels of the up train. He may have fallen there by slipping, as he stepped from the car; or, in some other way, having no connection whatever with the express train, have fallen under the wheels. The jury had no right to assume or infer, that the express train was the proximate or remote cause of the death; and if there was uncertainty as to the cause, the burden was upon the plaintiff, to connect it by competent proof with some negligent act of the defendants. The mere fact that the death occurred by being crushed under the wheels of the defendants’ car, raises no presumption of wrong against the defendants. (Curran v. The Warren Chem. and Manuf. Co., 34 How. Pr. ubi sup.)
The only evidence from or upon which the jury could find any negligence on the part of the defendants, was in connection with the running of the express train. That evidence was only proper upon the theory that such train caused the injury. I think I have shown that the evidence did not justify that conclusion, and that it could not be predicated upon a bare presumption or conjecture. Yet the learned jústice charged the jury that it was required by the statute that when a train of cars passes a crossing they shall ring the bell or blow the whistle, or give some signal showing their approach, .and that, independently of the statute they were bound to give notice of an approaching train. It is to be presumed that under this instruction the jury found from the evidence, which was conflicting, that no bell was *304 rung or whistle sounded, and therefore there was negligence on the part of the defendants.
In actions by persons using the highway and who have been injured at or upon the crossing by a passing train, the omission to give notice of the approaching train, is sufficient evidence, ordinarily, of negligence. But I am not aware that it has been .extended to any other class of persons. If a person not being at the time upon the public highway, is injured by a passing train, no such consequences of the omission to give notice will follow; and neither under the statute, nor without the statute, is any such duty imposed upon railroad companies.
An attempt was made to show that the deceased was upon the highway when he met his • death, but the evidence of ■ the plaintiff’s two witnesses, who alone testified on the subject was so contradictory that it furnished no guide for the jury, and was not sufficient to authorize the application of the law in respect to giving notice at crossings. For if he was not upon the highway but upon the defendant’s premises, and was injured while upon their premises, they owed no duty to him, under the statute, or otherwise, to give notice of the approaching train, for they had provided another and more complete method of escape from danger, which the deceased was bound to avail himself of.
I do not think, therefore, that there was sufficient evidence to go to the jury, of negligence on the part of the defendants. And while there should be no hesitation in holding railroad corporations to a strict responsibility for all injuries sustained by passengers received through their neglect, they should as unhesitatingly be relieved from liability, when the injury has been received without their fault, by a person who has omitted to avail himself of the means of safety which the company has provided, and who imprudently and recklessly ventures upon experiments which are attended with such fatal results.
I am of opinion that the judgment and order should be reversed and new trial granted, with costs to abide the event.