case at bar, although it may be difficult to reconcile it with the more recent decision of the court of appeals in Walker v. Walker (made March 1, 1898) 49 N. E. 663.

The question, then, remains whether a case has now been presented which calls for an award of alimony. It appears, as it appeared before the court of appeals, that the age and physical condition of the defendant are such as to render him incapable of earning anything towards the support of his wife, from whom he has been separated for about 30 years. The proof, however, establishes that he has some real property, none of which he can sell or mortgage because of the plaintiff's contingent right of dower, and which is in a dilapidated condition. His income from it does not exceed $1,000 a year, and most of it, if not all, is needed for his own support. Upon a consideration of all the circumstances disclosed, and especially in view of the expense to which he was unjustly put by the institution of groundless criminal proceedings against him, I am of the opinion that the alimony to be awarded should not exceed three dollars per week from the service of the order to be entered hereon.

Plaintiff's motion is granted to that extent.

(26 App. Div. 559.)

HOUSE v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department.   March 22, 1898.)

1. NONSUIT—REVIEW OF EVIDENCE.
   Upon review of a judgment based upon a nonsuit, all the testimony is to be construed in that light which is most favorable to the plaintiff.

2. ACCIDENT AT RAILROAD CROSSING—QUESTION FOR JURY.
   In an action against a railroad company for injuries sustained by plaintiff, who was struck by an engine while attempting to cross the track, she testified that, when 5 or 10 feet away, she looked up the track, and down around the curve, and saw no train; that she listened, but heard no bell or whistle; that she saw no flagman; that for a considerable period there had been gates at the crossing, the purpose of which she knew; and that at the time in question they were raised. Held that, upon the evidence, the question of contributory negligence was one of fact, not of law, and the refusal of the court to submit it to the jury was error.

Appeal from trial term, Orange county.

Action by Sarah E. House against the Erie Railroad Company. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

William Vanamee, for appellant.
Henry Bacon, for respondent.

GOODRICH, P. J. The action was brought to recover damages for injuries sustained by the plaintiff on December 16, 1895, by being struck by an engine drawing a train, while she was attempting to cross defendant's tracks at Main street in the village of Goshen. At the close of the plaintiff's case, the complaint was dismissed, upon three grounds: That there was no negligence proven on the part of

the defendant or its employés; that the evidence shows contributory negligence on the part of the plaintiff in going to the track at the time and place where she did; and that there was no evidence which would justify the jury in finding that the plaintiff was not guilty of contributory negligence. The plaintiff asked leave to go to the jury on several questions of fact, a statement of which is not now essential.

The dismissal of the complaint was error, unless from the evidence the court was justified in holding, as matter of law, that the plaintiff was guilty of contributory negligence. The trend of judicial authorities in this state, except where the proof of misconduct is clear and decisive, requires the court in cases of this character to submit to the jury the question of contributory negligence as matter of fact, instead of deciding it as matter of law.

In the case of Ernst v. Railroad Co., 35 N. Y. 9, 36, 38, the court (Porter, J., writing the opinion) said:

"It is not true that a traveler on a public thoroughfare is guilty of culpable negligence, as matter of law, if he does not stop to listen or look up and down the track before he goes over a crossing. The proposition is in direct conflict with repeated adjudications in this and in other courts. Whether such an omission is culpable depends upon the facts and circumstances of each particular case. * * *. The question whether the plaintiff was free from negligence in ordinary cases of this description is one of fact, to be determined by the jury, under appropriate instructions, and subject to the revisory power of the courts. Occasional instances occur where the proof of misconduct is so clear and decisive that the judges are bound to pass on the question of negligence, as matter of law."

In the case of Glushing v. Sharp, 96 N. Y. 676, the court said:

"The evidence showed that no bell was rung or whistle blown, and that the gate was raised, and thus the carelessness of the defendant was established. But the claim of the defendant is that the plaintiff should have been nonsuited on account of his own carelessness, and this claim he bases upon these facts: That at the place where the plaintiff looked, about thirty feet from the railroad track, his view was somewhat obstructed, and that he did not look again while passing the thirty feet, although during that space his view was unobstructed, and he could have seen the train if he had looked. We think the case as to plaintiff's negligence was properly submitted to the jury. He looked both ways, and whether, under all the circumstances, he should have looked again or continued to look, was for the jury to determine. The raising of the gate was a substantial assurance to him of safety, just as significant as if the gateman had beckoned to him or invited him to come on; and that any prudent man would not be influenced by it is against all human experience. The conduct of the gatemen cannot be ignored in passing upon plaintiff's conduct, and it was properly to be considered by the jury with all the other circumstances of the case."

It is not necessary to refer to other authorities upon this proposition. Nor is it needful to cite authorities in support of the proposition that, upon the review of a judgment based upon a nonsuit, all the testimony is to be construed in that light which is most favorable to the plaintiff.

There was evidence in this case tending to show the following facts: The plaintiff, a woman, 60 years of age, in full health, and familiar with the scene of the accident, came in a wagon from her home, in the village of Florida, about six miles from the place of the accident, and drove across the defendant's tracks. After tying her horses, she recrossed the track, for the purpose of shopping at a store on the

westerly side of the track, and then walked towards the railroad crossing again. She testified as follows:

"Before I got to the track, I looked up the track and down around the curve. That was before I got to the track. I should think I was then five or ten feet from the track. I did not see any train coming in either direction. I did not hear any bell or whistle blown. I did not see any flagman. * * * Then, after I started on, my attention was directed straight ahead, and the last I remember I was struck by this engine. * * * I had known these gates there at the crossing for years. * * * I know what it means when the gates are up. I understand that that is a signal for me to cross if I so desire. When they are down, I understand that that is the signal for me to stay back. This day that I was struck, there was no flagman upon the crossing. * * * Before I crossed that crossing that day, I listened for bell or whistle. I didn't hear any bell rung or whistle blown."

There was other evidence as to the flagman, both as to his presence and his acts; but on this appeal we must hold that the testimony presented by the plaintiff furnished some evidence of his absence or inattention to his duty.

Main street is a well-traveled, public highway, in the village of Goshen. At the intersection of the railroad, there were gates, which have been in use for a long time, but which at the time of the accident were out of order. The weather was quite cold, and had been for several days. The defendant contends, as shown by the cross-examination of one of the plaintiff's witnesses, that the gates were frozen and out of order, and had been so for four or five days. It does not appear exactly how long this condition had existed, nor how the gates could be frozen for a long period; but at the time of the accident the gates were raised. A flagman was in the vicinity, but there is evidence tending to show either that he was not at his post, or that, if at his post, he had his flag rolled up and under his arm; and there is no evidence that he warned the plaintiff of the proximity of the train. It is a fair construction of the evidence that the gates had been in use for a period of time which justified the plaintiff, accustomed to travel upon the highway, in assuming that, when lifted, they were an assurance that no train was about to cross the highway. It is evident that the defendant held the same view when it stationed a flagman at the point in question. The learned counsel for the company, in speaking of the fact that the gates were lifted and frozen, so as to be incapable of lowering, says in his brief: "It was for this reason that the flagman was upon the crossing."

Many cases may be found which arose under the railroad law as it existed prior to the recent revision, when the engineer of a railroad train was by statute compelled to whistle 80 rods from a highway which he was about to cross. The case of Ernst v. Railroad Co., supra, was decided when this provision in the railroad law was in force. This statute has been repealed, and, so far, the decision has no application to this case. The court in that case decided that the crossing of a highway by a railroad train without the whistle was a breach of duty; that the omission of customary signals was an assurance by the company that no engine was approaching within 80 rods of the crossing, and that a person might rely upon such assurance without the imputation, to a wrongdoer, of a breach of duty, and that, when the usual warning is withheld, the wayfarer has a right to as-

sume that the crossing is safe; that a person traveling the highway is bound only to exercise ordinary care, and, when he is injured by the negligence of a railroad company, it is no defense that, notwithstanding the omission of the lawful signals, he might by greater vigilance have discovered the approach of the train.

Beisiegel v. Railroad Co., 34 N. Y. 622, 633, was another case of failure to sound a whistle, but, in the concurring opinion, Porter, J., said:

"Upon this state of facts, it is obvious that the gross negligence of the defendant's agents was the sole cause of the injury. The omission of the customary signals was an assurance by the company to the plaintiff that no engine was approaching within a quarter of a mile on either side of the crossing. On this he was entitled to rely, and to the defendant he owed no duty of further inquiry. He was not bound to be on the lookout for danger when assured by the company that the crossing was safe."

A later case (Palmer v. Railroad Co., 112 N. Y. 234, 19 N. E. 678) affirms the doctrine in these words:

"The duty of the company was imperative, and it is obvious that an open gate was a direct and explicit assurance to the traveler that neither train nor engine was rendering the way dangerous,—that none was passing. A closed gate was an obstruction, preventing access to the road; an open gate was equally positive in the implication to be derived from it that the way was safe. Nothing less could be implied, and no other conclusion could be drawn, from that circumstance."

It makes no difference that there is no proof in this case that the company was by any municipal regulation required to maintain gates at the crossing on Main street, as it had actually maintained them there for a considerable period,—a fact of which the plaintiff was aware, and upon which she had a right to rely, and to assume that the open gates indicated that no train or engine was about to cross the highway. The issue was, therefore, whether she had exercised ordinary care in crossing the track.

Under the authorities cited, a question of fact was raised, and not a mere question of law; and the refusal of the court to submit the question to the jury, as requested by the plaintiff's counsel, was error, for which the judgment must be reversed. All concur, except BARTLETT, J., who concurs in the result.